EXHIBIT  A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AVALONBAY COMMUNITIES, INC., a California Corporation; BAY
COUNTRYBROOK, LP, a Limited Partnership; and DOES 1 through 25, inclusive;

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JANNA THOMAS, an Individual; and ROLANDO BROCK, an Individual;

| |
|---|
| FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
| E-FILED<br>7/29/2020 1:41 PM<br>Clerk of Court<br>Superior Court of CA,<br>County of Santa Clara<br>20CV368837<br>Reviewed By: R. Tien<br>Envelope: 4678739 |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | Santa Clara Superior Court<br>Downtown Superior Court<br>191 North First Street<br>Santa Clara, CA 95113 | CASE NUMBER:<br>*(Número del Caso):*<br>20CV368837 |
|---|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Ryan M. Herrera, Esq.; Tenant Law Group, PC; 100 Pine Street, Suite 1250 | San Francisco, CA 94111-5235

| DATE:<br>*(Fecha)* | 7/29/2020 1:41 PM | Clerk of Court | Clerk, by<br>*(Secretario)* | R. Tien | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Avalonbay communities, inc.,
a California Corporation

under: ☒ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)         ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☒ by personal delivery on *(date):*                2020

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |
|---|---|---|

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Kristen E. Drake, Esq. (SBN 202827); Ryan M. Herrera, Esq. (SBN 320865)<br>Tenant Law Group, PC<br>100 Pine Street, Suite 1250, San Francisco, CA 94111-5235<br>TELEPHONE NO.: (888) 510-7511    FAX NO.:(888) 376-1662<br>ATTORNEY FOR *(Name)*: Plaintiff Janna Thomas, *et al.* | **Electronically Filed<br>by Superior Court of CA,<br>County of Santa Clara,<br>on 7/29/2020 1:41 PM<br>Reviewed By: R. Tien<br>Case #20CV368837<br>Envelope: 4678739** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara
STREET ADDRESS:  191 North First Street
MAILING ADDRESS:  191 North First Street
CITY AND ZIP CODE:  San Jose, CA 95113
BRANCH NAME:  Downtown Superior Court

CASE NAME:
  Janna Thomas, *et al.* v. Avalonbay Communites Inc., *et al.*

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited   [ ] Limited<br>(Amount      (Amount<br>demanded   demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **20CV368837**<br><br>JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[x] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
  b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
     issues that will be time-consuming to resolve          in other counties, states, or countries, or in a federal court
  c. [ ] Substantial amount of documentary evidence      f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary    b. [ ] nonmonetary; declaratory or injunctive relief   c. [x] punitive
4. Number of causes of action *(specify)*:  11
5. This case [ ] is  [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 10, 2020

Ryan M. Herrera, Esq.
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**ATTACHMENT CV-5012**

# CIVIL LAWSUIT NOTICE

20CV368837

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA  95113*

CASE NUMBER: _____

<div style="border:1px solid black; text-align:center">

## PLEASE READ THIS ENTIRE FORM

</div>

*PLAINTIFF* (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint*, *Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANT* (The person sued):  **You must do each of the following to protect your rights:**

1. You must file a **written response** to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

    **Warning:  If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

*RULES AND FORMS:*   You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

*CASE MANAGEMENT CONFERENCE (CMC):*   You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC.*   You may ask to appear by telephone – see Local Civil Rule 8.

| | | |
|---|---|---|
| Your Case Management Judge is: Barrett, Thang N | **Department:** | 21 |

The 1st CMC is scheduled for:  (Completed by Clerk of Court)
      Date: 12/1/2020   Time: 3:45 PM   in **Department:** 21

The next CMC is scheduled for:  (Completed by party if the 1st CMC was continued or has passed)
      Date: _____   Time: _____   in **Department:** _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*   If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

**CIVIL LAWSUIT NOTICE**

E-FILED
7/29/2020 1:41 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
20CV368837
Reviewed By: R. Tien

Eric L. Toscano, Esq. (SBN 268235)
eric@tenantlawgroupsf.com
Kristen E. Drake, Esq. (SBN 202827)
kristen@tenantlawgroupsf.com
Ryan M. Herrera, Esq. (SBN 320865)
ryan@tenantlawgroupsf.com
Nicholas Goldman, Esq (SBN 309209)
nick@tenantlawgroupsf.com
TENANT LAW GROUP, PC
100 Pine Street, Suite 1250
San Francisco, CA 94111-5235
Tel: (888) 510-7511
Fax: (888) 376-1662

Attorneys for Plaintiffs JANNA THOMAS
and ROLANDO BROCK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

UNLIMITED JURISDICTION

| | |
|---|---|
| JANNA THOMAS, an Individual; and ROLANDO BROCK, an Individual;<br><br>Plaintiffs,<br><br>v.<br><br>AVALONBAY COMMUNITIES, INC., a California Corporation; BAY COUNTRYBROOK, LP, a Limited Partnership; and DOES 1 through 25, inclusive;<br><br>Defendants. | Case No.  20CV368837<br><br>**COMPLAINT FOR DAMAGES**<br><br>**[Unlimited Civil Case - Amount Demanded Exceeds $25,000]**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs JANNA THOMAS and ROLANDO BROCK (collectively, "PLAINTIFFS") for

causes of action against Defendants AVALONBAY COMMUNITIES, INC., BAY

COUNTRYBROOK, LP, and Does 1 through 25, inclusive, (collectively, "DEFENDANTS"),

hereby allege as follows:

## GENERAL ALLEGATIONS

1.      Plaintiff JANNA THOMAS ("MS. THOMAS") is an individual over the age of

-1-

1   eighteen who resides in the City of San José, County of Santa Clara, California.  MS. THOMAS
2   resided at the residential rental property located at 1887 TRADE ZONE COURT, SAN JOSE, CA
3   95131-3405 ("the PREMISES") from on or about September 26th, 2014 to on or about July 11th,
4   2020.

5       2.    Plaintiff ROLANDO BROCK ("MR. BROCK") is an individual over the age of
6   eighteen who resides in the City and County of San Francisco, California.  MR. BROCK resided at
7   the PREMISES from September 26th, 2014 to July 11th, 2020.

8       3.    PLAINTIFFS are informed and believe and thereon allege that AVALONBAY
9   COMMUNITIES, INC. ("AVALONBAY") is, and at all times mentioned in the Complaint was, a
10  business incorporated under the laws of the State of Maryland with its principal place of business in
11  Arlington, Virginia.  PLAINTIFFS are further informed and believe and thereon allege that at all
12  times relevant to this Complaint, AVALONBAY owned and/or managed the PREMISES.

13      4.    PLAINTIFFS are informed and believe and thereon allege that Defendant BAY
14  COUNTRYBROOK, LP ("COUNTRYBROOK") is, and at all times mentioned in the Complaint
15  was, a business incorporated under the laws of the State of Virginia with its principal place of
16  business in Arlington, Virginia.  PLAINTIFFS are further informed and believe and thereon allege
17  that at all times relevant to this Complaint, COUNTRYBROOK owned and/or managed the
18  PREMISES.

19      5.    PLAINTIFFS are ignorant of the true names and capacities of the defendants sued
20  herein as DOES 1 through 25, inclusive, and therefore sue these defendants by this fictitious name.
21  PLAINTIFFS will amend this Complaint to allege the true name and capacity of these defendants
22  when ascertained.  PLAINTIFFS are informed and believe and thereon allege that the fictitiously
23  named defendants are responsible in some manner for the occurrences alleged in this Complaint,
24  and that PLAINTIFFS' damages alleged in this Complaint were proximately caused by these
25  defendants.

26      6.    PLAINTIFFS are informed and believe and thereon allege that at all times material
27  to this Complaint, AVALONBAY and COUNTRYBROOK, as a corporation and limited
28  partnership, in addition to acting for themselves and on their own behalf individually, are and were

-2-

COMPLAINT FOR DAMAGES

1    acting as the agents, servants, employees, and/or representatives of, and with the knowledge,

2    consent, and permission of., and in conspiracy with, each and all of DEFENDANTS and within the

3    course, scope, and authority of that agency, service, employment, representation, and conspiracy.

4    PLAINTIFFS further allege on information and belief that the acts of each of the DEFENDANTS

5    were fully ratified by each and all the DEFENDANTS.  Specifically, and without limitation,

6    PLAINTIFFS allege on information and belief that the actions, failures to act, breaches, conspiracy,

7    and misrepresentations alleged herein and attributed to one or more of the specific DEFENDANTS

8    were approved, ratified, and/or done with the cooperation and knowledge of each and all the

9    DEFENDANTS.

10       8.      The acts and/or failures to act alleged in this Complaint occurred in the City San

11   Jose, County of Santa Clara, California.  The PREMISES is in the City of San Jose, County of Santa

12   Clara, California.

13       9.      This Court is the proper court because the making of the contract, which is the subject

14   of this Action, occurred within its jurisdictional area and the property that is the subject of this

15   Action is located within its jurisdictional area.

16       10.     PLAINTIFFS are informed and believe and thereon allege that, at all relevant times,

17   each of the DEFENDANTS was PLAINTIFFS' landlord and/or the agent of PLAINTIFFS'

18   landlord, and PLAINTIFFS were DEFENDANTS' tenant, as "landlord" and "tenant" are defined

19   under California common law; California Code of Civil Procedure section 1161, *et. seq.*; California

20   Civil Code section 1980, *et. seq.*; and other California statutory law.

21       11.     On or about September 26, 2014, JANNA THOMAS and ROLANDO BROCK

22   moved into the PREMISES pursuant to a written lease ("the Lease") with DEFENDANTS.  The

23   LEASE established a tenancy from September 26, 2014 to September 25, 2015 and continued yearly

24   thereafter.  The LEASE required that JANNA THOMAS and ROLANDO BROCK pay $2,474.00

25   rent per month and a security deposit of $750.00, which JANNA THOMAS and ROLANDO

26   BROCK paid.  The LEASE includes an attorney's fee provision.  Attached hereto as **Exhibit A** is a

27   true and correct copy of the LEASE.

28

TENANT
— LAW GROUP —

-3-

12. Throughout PLAINTIFFS' tenancy, there were numerous and substantial habitability defects and dangerous conditions at the PREMISES that together and individually constituted violations of the LEASE, as well as violations of applicable housing and residential tenancy laws, including but not limited to numerous provisions of the Uniform Housing Code, California Civil Code, California Health and Safety Code, San Francisco Municipal Health Code, San Francisco Building Code, San Francisco Housing Code, as well as other code violations. The defective and dangerous conditions at the PREMISES reflected decay, neglect, negligence, and a lack of adequate maintenance and management of the property for a prolonged period, some of which constitute immediate life-threatening hazards, directly affecting health and safety. The defective and dangerous conditions included but were not limited to ineffective waterproofing and weather protection of roof and exterior walls; a water supply not capable of producing hot and cold running water, not maintained in good working order; building, grounds, and appurtenances not kept clean, sanitary, and/or free from all accumulations of debris, filth, rubbish, garbage, rodents, and/or vermin; an inadequate number of appropriate receptacles for garbage and rubbish; and floors, stairways, and railings not maintained in good repair; dampness of habitable rooms; general dilapidation or improper maintenance; lack of adequate garbage and rubbish storage and removal facilities; deteriorated or inadequate foundations; defective or deteriorated flooring or floor supports; flooring or floor supports of insufficient size to carry imposed loads with safety; deteriorated or ineffective waterproofing of exterior walls, roofs, foundations, or floors defective or lack of weather protection for exterior wall coverings; nuisances (including but not limited to persistent water leaks, toxic microbial growth, and toxic airborne contaminants; and inadequate maintenance.

13. Throughout their tenancy at the PREMISES, PLAINTIFFS repeatedly notified DEFENDANTS and/or their agents of the defective and dangerous conditions set forth herein, and requested that DEFENDANTS have them addressed, repaired, and/or remedied. Despite these requests and DEFENDANTS' knowledge of the defective and dangerous conditions as described in this Complaint, DEFENDANTS failed and refused to repair the conditions, and/or have done so in a negligent, unprofessional, and shoddy fashion.

-4-

COMPLAINT FOR DAMAGES

14.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS had both actual and constructive knowledge of the conditions and defects complained of herein, and despite this knowledge, DEFENDANTS refused and failed to correct the defective and dangerous conditions, performed inadequate, shoddy repairs, and/or deliberately delayed making repairs and remedying the conditions for an unreasonable amount of time.

15.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS had both actual and constructive knowledge of the nuisances with the neighbors of the PREMISES. These nuisances include but are not limited to barking of dogs, yelling, screaming, slamming of doors, extremely loud music from cars and apartments during the day and after quiet hours, guests visiting for more than fourteen days, gatherings and parties and vandalism to PLAINTIFF's car. Throughout their tenancy at the PREMISES, PLAINTIFFS repeatedly notified DEFENDANTS and/or their agents of the conditions set forth herein, and requested that DEFENDANTS have them addressed, repaired, and/or remedied given that they were all strictly prohibited under the LEASE (Section Rules and Regulations, ¶ 16-21). Despite these requests and DEFENDANTS' knowledge of the conditions as described in this Complaint, DEFENDANTS failed and refused to repair the conditions, and/or have done so in a negligent, unprofessional, and shoddy fashion. This oppressive, malicious, or fraudulent conduct was perpetrated, authorized, or knowingly ratified by an officer, director, or managing agent of the corporation.

16.     DEFENDANTS' actions and/or omissions alleged herein proximately caused PLAINTIFFS to suffer general and special damages, including but not limited to a decrease in housing services without a corresponding reduction in rent, overpayment and/or excessive payment of rent, loss of use and enjoyment of the property, economic loss, fear of loss of housing, bodily injury, substantial discomfort and annoyance, and mental and emotional injury, the amount of which exceeds the minimum jurisdictional threshold of this court and which will be proven at trial. PLAINTIFFS have also been forced to incur attorney's fees and costs in prosecuting this Action.

17.     In committing the actions and/or omissions alleged herein, DEFENDANTS acted in knowing violation of and/or in reckless disregard of the RENT ORDINANCE. DEFENDANTS' conduct was without right or justification.

18.     DEFENDANTS' actions and/or omissions as alleged herein were done with malice, oppression, and fraud, as defined in California Civil Code section 3294, and PLAINTIFFS should therefore recover, in addition to actual damages, damages to make an example of and punish DEFENDANTS.  DEFENDANTS acted with the knowledge that their conduct was without right or justification.  DEFENDANTS' conduct was malicious and oppressive insofar as DEFENDANTS' actions and/or omissions were done with the intention to cause harm and distress to PLAINTIFFS and/or were done with willful and conscious disregard of the rights and safety of PLAINTIFFS and DEFENDANTS' duties as landlords.

### FIRST CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF HABITABILITY
### (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

19.     PLAINTIFFS re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

20.     PLAINTIFFS entered into a written residential lease agreement with DEFENDANTS for the exclusive use and possession of the PREMISES.  The warranty of habitability is implied in all residential rental agreements and imposes upon a landlord the obligation to maintain the leased dwelling in a habitable condition fit for human occupancy throughout the term of the lease.

21.     PLAINTIFFS performed all of the obligations under the LEASE except those obligations for which they were excused or which they were prevented from performing by DEFENDANTS' actions and/or omissions.

22.     DEFENDANTS breached the warranty of habitability implied in the LEASE and implied by PLAINTIFFS' tenancy at the PREMISES by undertaking the course of conduct described herein that directly resulted in the existence of the defective and dangerous conditions alleged herein.  DEFENDANTS had actual or constructive knowledge of each defective condition and were notified by PLAINTIFFS of those defective conditions, but DEFENDANTS failed and refused to make corrections and repairs and/or failed to make adequate and timely corrections and repairs.

COMPLAINT FOR DAMAGES

23.    DEFENDANTS knew or should have known that permitting the defective conditions alleged herein to exist at the PREMISES could injure PLAINTIFFS' physical and emotional health and well-being, and that such conduct would constitute a serious threat and danger to PLAINTIFFS' health and safety.

24.    As a direct and proximate result of DEFENDANTS' acts and failures to act as alleged herein, PLAINTIFFS have suffered actual and special damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## BREACH OF THE COVENANT OF QUIET ENJOYMENT
## (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

25.    PLAINTIFFS re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

26.    PLAINTIFFS entered into a written residential lease agreement with DEFENDANTS for the exclusive use and possession of the PREMISES. Inherent in the LEASE is an implied covenant of quiet use and enjoyment of the leased premises.

27.    By the actions and/or omissions described herein, DEFENDANTS interfered with, interrupted, and deprived PLAINTIFFS of the full and beneficial use of the PREMISES and disturbed their peaceful possession of the PREMISES.

28.    These acts of interference, interruption, deprivation, and disturbance by DEFENDANTS amounted to breaches of the covenant of quiet enjoyment implied in all rental agreements and codified in California Civil Code section 1927.

29.    As a direct and proximate result of DEFENDANTS' violation of PLAINTIFFS' right to the quiet enjoyment of the PREMISES, PLAINTIFFS have suffered actual and special damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## NUISANCE
## (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

30.    PLAINTIFFS re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

-7-

COMPLAINT FOR DAMAGES

31.     DEFENDANTS' acts and/or failures to act created an obstruction to the free use of the property and therefore constitute a nuisance within the meaning of California Civil Code section 3479 and California Code of Civil Procedure section 731 in that they substantially and unreasonably deprived PLAINTIFFS of the safe, healthy, and comfortable use and enjoyment of the PREMISES.

32.     As the owners, landlords, and/or managers of the PREMISES, DEFENDANTS owed a duty to PLAINTIFFS, which DEFENDANTS breached by, among other things, maintaining a nuisance within the meaning of California Civil Code section 3479 and California Code of Civil Procedure section 731.

33.     As a proximate result of DEFENDANTS' maintenance of the nuisance, PLAINTIFFS suffered mental and emotional injury, in an amount to be determined at trial.

34.     In maintaining the nuisance, DEFENDANTS acted with full knowledge of the consequences thereof and of the damage being caused to PLAINTIFFS.  Despite this knowledge, DEFENDANTS continued to maintain the nuisance and/or failed to fully abate the nuisance by repairing the defective and dangerous conditions of the PREMISES or causing them to be repaired in a timely and proper manner.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

35.     PLAINTIFFS re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

36.     Because of the landlord-tenant relationship between DEFENDANTS and PLAINTIFFS, DEFENDANTS owed PLAINTIFFS the duty to exercise reasonable care in the management and control of the PREMISES, owed a duty to provide PLAINTIFFS with a residential rental property meeting minimum standards of habitability, and were required to allow PLAINTIFFS the peaceful and quiet enjoyment of the PREMISES.

37.     By the conduct alleged herein, DEFENDANTS negligently breached the duties owed to PLAINTIFFS, and violated their statutory duties to PLAINTIFFS by violating certain housing and building codes, local ordinances, and state statutes, including but not limited to San José Municipal Code section 17.20.900, *et seq.*

-8-

38.     At all times relevant, PLAINTIFFS belonged to a class of persons for which these statutes were designed to protect.     The harm PLAINTIFFS have suffered because of DEFENDANTS' violation of the laws, codes, ordinances, and statutes referenced above is the type of harm these laws, codes, ordinances, and statutes were designed to prevent.

39.     As a direct and proximate result of the conduct of DEFENDANTS alleged herein, PLAINTIFFS suffered actual and special damages, including mental and/or emotional trauma in an amount to be determined at trial.

<div align="center">

**FIFTH CAUSE OF ACTION**
**VIOLATION OF SAN JOSÉ MUNICIPAL CODE SECTION 17.23.1250(A)**
**(WRONGFUL EVICTION & ANTI-RETALIATION)**
**(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

</div>

40.     PLAINTIFFS re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

41.     PLAINTIFFS are informed and believe and thereon allege that at all pertinent times, PLAINTIFFS' tenancy at the PREMISES was subject to the TPO.

42.     DEFENDANTS' conduct as herein alleged constituted a series of wrongful actions and omissions to recover possession of the PREMISES by constructive eviction in violation of Section 17.23.1250(A) of the TPO.     At no time did DEFENDANTS have just cause to evict PLAINTIFFS under the TPO.  DEFENDANTS' endeavors, through the various actions and/or omissions set forth herein to recover possession, have violated the requirements of the TPO.

43.     Additionally, DEFENDANTS caused PLAINTIFFS to quit the PREMISES involuntarily.

44.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS willfully failed to comply with the obligations established under the TPO.

45.     As a direct and proximate result of DEFENDANTS' actions and/or omissions, PLAINTIFFS have suffered special and general damages in amounts to be proven at trial.

46.     Section 17.23.1280(C)(2) of the TPO provides for an award of reasonable costs and reasonable attorney's fees against a party found to have violated the TPO, and PLAINTIFFS will seek such an award of costs and attorney's fees from DEFENDANTS.

<div align="center">

-9-

</div>

47.     Section 17.23.1280(C)(3) of the TPO also provides for an award of treble damages for a landlord's willful failure to comply with the obligations established under the TPO.  Because DEFENDANTS willfully failed to comply with said obligations, PLAINTIFFS will be entitled to treble damages, including damages for physical injury and emotional distress, based upon the alleged conduct of DEFENDANTS herein.

<div align="center">

**SIXTH CAUSE OF ACTION**
**VIOLATION OF SAN JOSÉ MUNICIPAL CODE SECTION 17.23.010, *ET SEQ.***
**(WRONGFUL EVICTION)**
**(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

</div>

48.     PLAINTIFFS re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

49.     PLAINTIFFS are informed and believe and thereon allege that at all pertinent times, the PREMISES were a Rent Stabilized Unit, as the term is defined at San José Municipal Code section 17.23.167; and that PLAINTIFFS' tenancy at the PREMISES was subject to the ARO, which prohibits landlords from enacting excessive rent increases and requires landlords to file notices with the City of San José's Director of the Department of Housing following evictions of one or more tenants from a Rent Stabilized Unit.  Landlords may not recover possession of a rental unit from a tenant or tenant household not otherwise in violation of the terms of occupancy of the rental unit if either the landlord's dominant motive in seeking to recover possession of the rental unit is to retaliate against the tenant for exercising any rights under Chapter 17.23 or to evade the purposes of Chapter 17.23.

50.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS violated the ARO by enacting excessive rent increases with respect to the PREMISES and failed to file one or more notices with the City of San José's Director of the Department of Housing in connection with the PREMISES, as required by San José Municipal Code section 17.23.600.

51.     PLAINTIFFS are further informed and believe and thereon allege that DEFENDANTS' dominant motive in seeking to recover possession of the PREMISES was to retaliate against PLAINTIFFS for exercising one or more rights under Chapter 17.23 of the San José Municipal Code and/or to evade the purposes of Chapter 17.23 of the San José Municipal Code.

<div align="center">

-10-
COMPLAINT FOR DAMAGES

</div>

52.     DEFENDANTS' endeavors, through the various actions and/or omissions set forth herein, have violated the requirements of the ARO.

53.     Section 17.23.550 of the ARO provides that, in addition to any other remedies provided by law, any landlord found to have evicted a tenant from a Rental Stabilized Unit in violation of the ARO is liable to that tenant for a fine of up to ten thousand dollars, and the reasonable costs incurred by the tenant as a result of the eviction, including the costs of moving the tenant household and the reasonable costs of bringing such suit, including court costs and attorney fees.

54.     As a direct and proximate result of DEFENDANTS' actions and/or omissions, PLAINTIFFS have suffered special and general damages in amounts to be proven at trial.

55.     Pursuant to Section 17.23.550 of the ARO, PLAINTIFFS will seek from DEFENDANTS, reasonable costs incurred by PLAINTIFFS as a result of the eviction, a fine of up to ten thousand dollars, costs, and attorney's fees.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF SAN JOSÉ MUNICIPAL CODE SECTION 17.23.1250(B)**
**(FAILURE TO PAY RELOCATION ASSISTANCE)**
**(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

56.     PLAINTIFFS re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

57.     Under certain no-fault evictions under the TPO—namely, substantial rehabilitation of the rental unit (Section 17.23.1250(A)(8)), Ellis Act (Section 17.23.1250(A)(9)), and owner-move-in (Section 17.23.1250(A)(10))—a landlord must pay the displaced eligible tenant(s) relocation payments. *See* San José Mun. Code § 17.23.1250(B)(1)–(2).  Tenants evicted from unpermitted units in response to an Order to Vacate (Section 17.23.1250(A)(11)) or in response to a landlord's good faith attempt to relocate the tenant(s) to end the unpermitted use (Section 17.23.1250(A)(12)) are also entitled to relocation payments. *Id.* § 17.23.1250(B)(3).

58.     The PREMISES required rehabilitation work such that PLAINTIFFS were entitled to relocation assistance for substantial rehabilitation of the PREMISES.

-11-

59.     DEFENDANTS' actions and/or omissions, as described above, constitute a violation of Section 17.23.1250(B), as DEFENDANTS willfully failed to provide temporary relocation expenses despite the PREMISES being uninhabitable.

60.     As a direct and proximate result of DEFENDANTS' actions and/or omissions, PLAINTIFFS have suffered special and general damages in amounts to be proven at trial.

61.     Section 17.23.1280(C)(2) of the TPO provides for an award of reasonable costs and reasonable attorney's fees against a party found to have violated the TPO, and PLAINTIFFS will seek such an award of costs and attorney's fees from DEFENDANTS.

62.     Section 17.23.1280(C)(3) of the TPO also provides for an award of treble damages for a landlord's willful failure to comply with the obligations established under the TPO. Because DEFENDANTS willfully failed to provide PLAINTIFFS with relocation assistance, thereby willfully failing to comply with their obligations established under the TPO, PLAINTIFFS will be entitled to treble damages, including damages for physical injury and emotional distress.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF SAN JOSÉ MUNICIPAL CODE SECTION 17.20.900, *ET SEQ.***
**(SUBSTANDARD HOUSING)**
**(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

63.     PLAINTIFFS re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

64.     Under San José Municipal Code section 17.20.900, a dwelling is deemed and declared to be substandard if there exists any of certain listed conditions, including but not limited to inadequate sanitation/ventilation/space requirements, structural hazards, hazardous wiring, hazardous plumbing, hazardous mechanical equipment, faulty weather protection, faulty weather protection, fire hazard/inadequate fire protection, faulty materials of construction, hazardous or unsanitary premises, inadequate maintenance, unhealthy conditions, inadequate exits, or improper occupancy.

65.     DEFENDANTS violated San José Municipal Code section 17.20.900, *et seq.*, by undertaking the course of conduct described herein that directly resulted in the existence of one or more of the defective and dangerous conditions listed in the preceding paragraph.

-12-

66.     DEFENDANTS had actual or constructive knowledge of each defective condition and were notified by PLAINTIFFS of these defective conditions, but DEFENDANTS failed and refused to make corrections and repairs and/or failed to make adequate and timely corrections and repairs.

67.     DEFENDANTS knew or should have known that permitting the defective conditions alleged herein to exist at the PREMISES could injure PLAINTIFFS' physical and emotional health and wellbeing, and that such conduct would constitute a serious threat and danger to PLAINTIFFS' health and safety.

68.     As a direct and proximate result of DEFENDANTS' acts and failures to act as alleged herein, PLAINTIFFS have suffered actual and special damages in an amount to be determined at trial.

69.     San José Municipal Code section 17.20.980 permits a tenant to institute a civil action against the property owner who creates or maintains substandard housing to recover actual damages, costs, attorney's fees, and a civil penalty of $500.00.  As such, PLAINTIFFS will seek damages, costs, attorney's fees, and a civil penalty of $500.00 from DEFENDANTS.

### NINTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1940.2
### (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

70.     PLAINTIFFS re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

71.     California Civil Code section 1940.2 provides that it is unlawful for a landlord to take certain actions for the purpose of influencing a tenant to vacate a dwelling, among them (1) to use, or threaten to use, force, willful threats, or menacing conduct constituting a course of conduct that interferes with the tenant's quiet enjoyment of the premises that would create an apprehension of harm in a reasonable person, and (2) to commit a significant and intentional entry into a tenant's rental unit without proper notice.

72.     By the actions and/or omissions alleged herein, DEFENDANTS used menacing conduct that interfered with PLAINTIFFS' quiet enjoyment of the PREMISES and unlawfully

-13-

entered the PREMISES in violation of California Civil Code section 1940.2 to influence PLAINTIFFS to vacate the PREMISES.

73.     By violating California Civil Code section 1940.2, DEFENDANTS are liable for actual damages sustained by PLAINTIFFS, and for statutory damages of up to $2,000.00 for each violation of the statute.

## TENTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1942.5 (RETALIATION)
### (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

74.     PLAINTIFFS re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

75.     PLAINTIFFS repeatedly notified DEFENDANTS, in their capacities as landlords of the PREMISES, of the defective and dangerous conditions pertaining to the PREMISES, and requested that DEFENDANTS address, repair, and/or remedy these defective and dangerous conditions.

76.     DEFENDANTS caused PLAINTIFFS to quit involuntarily to retaliate against PLAINTIFFS for lawfully and peaceably exercising their rights, including but not limited to by informing DEFENDANTS of the defective and dangerous conditions pertaining to the PREMISES.

77.     As a proximate result of DEFENDANTS' retaliatory actions against PLAINTIFFS, PLAINTIFFS suffered mental and emotional injury, in an amount to be determined at trial.

78.     In retaliating against PLAINTIFFS, DEFENDANTS acted with full knowledge of the consequences thereof and of the damage being caused to PLAINTIFFS. Despite this knowledge, DEFENDANTS caused PLAINTIFFS to quit involuntarily.

79.     DEFENDANTS' actions and/or failure to act have were both oppressive and malicious in that they subjected PLAINTIFFS to cruel and unjust hardship in willful and conscious disregard of their rights and safety.

80.     Because the acts taken towards PLAINTIFFS were carried out by DEFENDANTS in a despicable, deliberate, callous, and intentional manner to injure and damage PLAINTIFFS, PLAINTIFFS are entitled to recover punitive damages of $2,000.00 for each retaliatory act.

-14-

### ELEVENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

81. PLAINTIFFS re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as though fully set forth herein.

82. DEFENDANTS' actions and/or omissions alleged herein constitute extreme and outrageous conduct beyond the bounds of decency.

83. DEFENDANTS' conduct was knowing, intentional, and willful. DEFENDANTS intended to cause PLAINTIFFS harm and/or acted with reckless disregard of the probability that PLAINTIFFS would suffer emotional distress.

84. As a direct and proximate result of DEFENDANTS' outrageous conduct, PLAINTIFFS suffered, and continue to suffer, severe emotional distress in an amount to be determined at trial.

85. DEFENDANTS intended to cause injury to PLAINTIFFS by their outrageous conduct. DEFENDANTS' conduct was despicable and they acted with malice as well as willful and conscious disregard for the rights and safety of PLAINTIFFS. DEFENDANTS' conduct entitles PLAINTIFFS to recover punitive damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as follows:

1. For general and special damages in the amount of $500,000.00, or according to proof, for each cause of action;

2. For punitive damages according to proof under applicable causes of action;

3. For prejudgment interest on the amount of any damages awarded;

4. For damages for injury, including mental and emotional injury, under applicable causes of action;

5. For contractual damages under applicable causes of action;

6. For attorney's fees and costs under the LEASE and applicable causes of action;

-15-

COMPLAINT FOR DAMAGES

7.     For statutory damages and penalties under applicable causes of action, including treble damages under the Fifth and Seventh Causes of Action;

8.     For such other and further relief as the court may deem just and proper and according to equity.

DATED:  July 29, 2020

TENANT LAW GROUP, PC

By _____

Ryan M. Herrera, Esq.
Attorney for Plaintiffs JANNA THOMAS and
ROLANDO BROCK

## **DEMAND FOR JURY TRIAL**

PLAINTIFFS hereby demand a jury trial.

TENANT LAW GROUP, PC

By _____

Ryan M. Herrera, Esq
Attorney for Plaintiffs JANNA THOMAS and
ROLANDO BROCK

-16-

Exhibit A

Account# CA079-008-1887-8

## CALIFORNIA APARTMENT LEASE AGREEMENT

### INTRODUCTION

#### eaves San Jose II

We are pleased that you have chosen our Community as your new home!

You are entering into an Apartment Lease Agreement (this "Lease") as of the Lease Execution Date set forth in the Summary of Key Lease Terms (the "Summary") that we have provided to you as part of this Lease.  Capitalized terms used in this Lease that are not defined are identified in the Summary.

We have tried to make this Lease as easy as possible for you to review, including writing much of it in a question and answer format.  Your Lease consists of all of the following, taken together:

- This Introduction
- Document 1:   Summary of Key Lease Terms
- Document 2:   Questions and Answers (Additional Lease Terms)
- Document 3:   Community Specific Terms
- Document 4:   Community Policies
- Document 5:   Security Deposit Agreement
- Any Other Addenda and Documents we give to you as part of the Lease at the time you enter into the Lease.
- Any Rules and Regulations posted from time to time at the Community

This Lease is contingent on our approving your application and we are entering into it with you based on what you told us in your application.  Your representations in the application are deemed material.  If any of those representations are untrue, incorrect or misleading, you will have breached this Lease and we may terminate this Lease in accordance with applicable law.

1 of 21

*RB   JT*

## APARTMENT LEASE AGREEMENT - SUMMARY OF KEY LEASE TERMS

This Summary of Key Lease Terms (the "Summary") is an integral part of your Lease and is included within this Lease for all purposes. All terms used in the Summary are deemed to be defined terms for purposes of the Lease.

**APARTMENT ADDRESS: 1887 Trade Zone Court, San Jose, California 95131**
**COMMUNITY NAME ("The Community"): eaves San Jose II**

**LEASE EXECUTION DATE: 09/11/2014**

| | | | |
|---|---|---|---|
| **LEASE BEGIN DATE:** | 09/26/2014 | **CURRENT LEASE TERM:** | 12 |
| **LEASE END DATE:** | 09/25/2015 | **ORIGINAL MOVE-IN:** | 09/26/2014 |

| | | |
|---|---|---|
| **RESIDENT(S):** | Janna Thomas | **OCCUPANT(S):** |
| | Rolando Brock | |

**MANAGER:** We are the property manager and agent of the Owner. In this Lease, the Manager is referred to as "we", "us", and "our".

Name: **AvalonBay Communities, Inc.**
Address: **2500 Trade Zone Blvd, San Jose, California 95131**
Phone Number: **(408)945-6650**

**OWNER:** The Owner is:

Name: **AvalonBay Trade Zone Village, LLC**
Address: **671 N. Glebe Road, Suite 800, Arlington, VA 22203**

**PAYMENT OBLIGATIONS (ALL AMOUNTS PAYABLE UNDER THIS SECTION CONSTITUTE "RENT"):**

**SUMMARY OF RECURRING MONTHLY CHARGES:**

| | | | |
|---|---|---|---|
| Base Rent: | $2,457.00 | | |
| Trash Collections | $17.00 | | |
| | | | |
| TOTAL Monthly Charges: | $2,474.00 | First Month Proration: | $413.00 |

**SUMMARY OF REQUIRED DEPOSITS:**                    **OWNER UTILITY OBLIGATIONS:**

| | | | |
|---|---|---|---|
| Security Deposit: | $750.00 | Electricity: | Paid by Resident |
| | | Gas/HWE: | Paid by Resident |
| | | Trash: | Paid by Resident |
| | | Water: | Paid by Resident |
| | | Sewer: | Paid by Resident |
| | | Other: | Not Applicable |

**SUMMARY OF ONE-TIME PAYMENTS:**

**Application Fees**            $60.00

**MISCELLANEOUS TERMS/CHARGES:**                    **ASSIGNMENTS:**

| | | |
|---|---|---|
| *RENT DUE DATE:* | *1st of Month* | **PARK - ASSIGNED DETACHED GARAGE - 2-9-49** |
| *LATE CHARGE DATE:* | 4th | |
| *LATE CHARGE:* | $60.00 | |
| *Returned Check Charge:* | $25.00 | |

*RB   JT*

## CALIFORNIA APARTMENT LEASE AGREEMENT
## QUESTIONS AND ANSWERS (ADDITIONAL LEASE TERMS)

The *answers* to these questions form a part of this Lease.  This Table of Contents and the questions themselves are not a part of the Lease, but have been provided to give you a convenient reference tool.

**TABLE OF CONTENTS**

*My Apartment and my Lease Agreement*
1. Who are the parties to my Lease?
2. Which Apartment and non-residential units (garage, storage) am I renting?
3. Who is allowed to live in my Apartment?
4. Can I sublease or assign my Apartment Lease to someone else?
5. When can I move into the Apartment?
6. How long does my Lease run?
7. What if I sign this Lease and do not move into my Apartment?
8. Who should I contact if I have questions or concerns regarding this Lease, my Apartment or the Community?

*My Financial Obligations under the Lease*
9. Who is responsible for paying the Rent and meeting other Resident obligations?
10. What is my Rent under the Lease?
11. What are my monthly financial obligations to the Owner and Manager under the Lease?
12. Will I have any other financial obligations to Owner and Manager under the Lease?
13. Where and when do I pay my Rent?
14. Will my financial obligations change during the Lease term?
15. Am I required to pay a security deposit?

*Rules and Regulations*
16. What rules and regulations will apply during the Lease term?
17. Are there any general behavioral guidelines?
18. What if I don't follow the rules and regulations?
19. What if my guests or other Occupants don't follow the rules and regulations?

*Default Provisions*
20. When will I be in default under this Lease?
21. What are the consequences of being in default under this Lease?

*Utilities*
22. Who is responsible for paying for utility services to the Apartment?
23. How will I be billed for utilities that are not included in my Rent?
24. Do I have to contact any utility companies?

*Care of my Apartment and Responsibilities Relating to my Apartment and Community*
25. Should I inspect my Apartment when I move in?
26. Will you provide me with light bulbs?
27. What are my general responsibilities in caring for my Apartment and the Community?
28. What are my responsibilities to heat and cool my Apartment?
29. Can I make any changes or improvements to my Apartment?
30. Are there any actions I am required to take to help prevent excessive mold and mildew growth?
31. What if there is damage to the Apartment or the Community?
32. Am I required to purchase renter's insurance?
33. How does parking work at the Community?
34. Are there any restrictions on my use of a storage area?
35. Are there any restrictions on materials that I can bring into the Community?
36. How will you deal with pest issues in my apartment home?

*RB   JT*

### TABLE OF CONTENTS (CONT.)

*Owner's and Manager's Responsibilities Relating to my Apartment and the Community*
37. What are the obligations of the Owner and Manager with regard to the Community?
38. Are the Owner and Manager responsible for my personal security or the security of my property?
39. When can the Owner or the Manager enter my Apartment?
40. How will you treat the personal information I provide to you?
41. Are there any other limitations on the liability of Owner and Manager or indemnification obligations by me?
42. Whose responsibility is it if I ask one of Owner's or Manager's employees for extra help?

*Matters Relating to Moving Out*
43. How does your 30 day guarantee work?
44. What if I want to end my Lease early but I make this decision after the first 30 days?
45. Will I have to pay back any concessions I received?
46. Are there any special rules for members of the military?
47. What if I don't move out by the Lease End Date?
48. When should I turn in my keys?
49. Do I have to clean the Apartment when I leave?
50. What is "ordinary wear and tear"?
51. What if I leave personal property in the Apartment when I move out?

*Miscellaneous*
52. How will you provide notice to me when it is required?
53. How should I provide formal legal notice to you?
54. Are there any third party rights that could affect the Community or my Apartment?
55. What other general provisions apply to this Lease?
56. Do the provisions of this Lease survive the Lease End Date and/or termination of this Lease?
57. If I have a disability, may I request a modification to my apartment or the common areas, or an accommodation to your policies, practices or services?
58. Does the Owner have the right to make any changes to my apartment?

*RB   JT*

*My Apartment and my Lease Agreement*

1. **Who are the parties to my Lease?**

   This Lease is between the Owner and the Residents listed in the Summary. When we use the terms "we," "our" or "us" in this Lease, we are referring to the Owner or to the Manager acting on behalf of the Owner. When we use the term "you" or "your" in this Lease we are referring to the Residents, individually and collectively. The company listed as "Manager" in the Summary is the manager of the Community and has the authority to act as agent for the Owner in managing the Community. The Manager may or may not be the same company as the Owner.

2. **Which Apartment and non-residential units (garage, storage) am I renting?**

   You are renting the Apartment listed under "Apartment Home" in the Summary. Your Apartment is located in the apartment Community listed under "Apartment Address" in the Summary. In addition, if you have elected to rent a Garage or Storage Unit, those units are listed in the Summary under "Assignments." Your Apartment and the Community, including all buildings, common grounds, amenity and parking areas, are together called the "Premises." You may only use the Apartment as a private residence, unless you have first obtained our written approval, which we may give or withhold in our sole discretion, subject to applicable law.

3. **Who is allowed to live in my Apartment?**

   Only the individuals and pets specifically identified in the Summary may live in your Apartment. You are not permitted to take in boarders or roommates without our prior written consent, which we may give or withhold in our sole discretion. No one other than the Residents and Occupants identified in the Summary may stay in your Apartment for more than four consecutive days or more than eight individual days in any one calendar month without our written permission.

4. **Can I sublease or assign my Apartment Lease to someone else?**

   Subletting or securing a replacement resident, and any assignment of this Lease by you, will be allowed only with our prior written consent, which may be granted or withheld in our sole discretion. If we permit you to sublet your Apartment or assign this Lease, you will remain responsible for the payment of all amounts due under this Lease and the performance of all other obligations under this Lease, including payment for any damages. If you request that we consent to the sublease or assignment of your Lease, we may elect, at our sole option, subject to applicable law, to terminate your Lease and enter into a new Lease directly with the person to whom you propose to sublease or assign.

5. **When can I move into the Apartment?**

   You may move into the Apartment on or after the Lease Begin Date set forth in the Summary. Although we expect the Apartment to be ready for you on that date and it is rare that an apartment is not ready for a resident, in the event that the Apartment is not ready for you to move in on the Lease Begin Date, neither the Owner nor the Manager will be liable for the delay. However, you will not be required to pay Rent and other monthly charges during the period of the delay.

   If there is a delay in availability of your Apartment of more than 14 days, you may terminate this Lease by providing written notice to us up to the date when you are advised that the Apartment will be ready for occupancy within 7 days, but no later.

   If we allow you to move into your Apartment prior to the Lease Begin Date, you must begin paying Rent and performing your other obligations under this Lease beginning on the date you actually move into your Apartment. The date you move into your Apartment will not affect the Lease End Date or other terms of the Lease.

6. **How long does my Lease run?**

   The Lease begins on the Lease Begin Date specified in the Summary and ends on the Lease End Date specified in the Summary, unless it is either terminated, extended or renewed under the provisions of this Lease.

   a. <u>Terminated</u>: This Lease may be terminated by us if you default (See the answer to Question 21 below), or by you and us if we together change the Lease End Date (See the answers to Questions 43 and 44 below).

   b. <u>Renewed</u>: We may offer to renew your current Lease at any time before the end of the current Lease, but we have no obligation to do so. Your renewal lease term would begin at the end of the term of this Lease and may be on different terms from this Lease, which will be reflected by a new Lease signed by you and by us.

   c. <u>Extended</u>: **BY ENTERING INTO THIS LEASE AGREEMENT YOU AGREE THAT IF**

*RB   JT*

**YOU DO NOT SEND US WRITTEN NOTICE OF YOUR INTENTION NOT TO RENEW YOUR LEASE AT LEAST THIRTY (30) DAYS PRIOR TO THE LEASE END DATE, YOUR LEASE WILL BE AUTOMATICALLY EXTENDED ON A MONTH-TO-MONTH BASIS UNLESS WE GIVE YOU NOTICE AT ANY TIME PRIOR TO THE LEASE END DATE THAT THE LEASE WILL END ON THE LEASE END DATE WITHOUT A MONTH-TO-MONTH EXTENSION.** If we permit you to continue as a Month-to-Month resident, you must pay the Community's <u>market rent for your Apartment at that time (as determined by us in our sole discretion and communicated by us to you at least thirty (30) days prior to the Lease End Date) together with any Month-to-Month Premium if applicable.</u>

If you are or become a Month-to-Month resident your Lease will automatically be renewed on a month-to-month basis, unless you or we provide thirty (30) days' prior written notice to the other of termination. In addition, we will have the right to increase your Rent from time to time upon thirty (30) days' written notice to you, subject to applicable law.

We may give you notice any time through the Lease End Date that we intend to terminate the Lease as of the Lease End Date and will not renew on a month-to-month or any other basis. **Nothing in this section is intended to waive our right to immediately file suit for eviction, without prior notice, if you remain in possession of the Apartment after the Lease End Date without our permission or consent.** If we give you notice of our intent not to renew your Lease and you do not vacate the Apartment prior to the Lease End Date, then you will be a holdover resident and we reserve the right to terminate your tenancy pursuant to applicable law.

7. **What if I sign this Lease and do not move into my Apartment?**

By signing this Lease, you have committed to pay Rent and Other Charges through the Lease End Date. This means that even if you do not take possession of your Apartment, you will remain liable for all of your obligations under this Lease, subject to our duty to take reasonable actions to rent your apartment to another resident. You understand and acknowledge that we have an obligation to use commercially reasonable efforts to lease your Apartment as quickly as possible to other qualifying affordable income households in the event that you do not take possession of the Apartment in order to minimize the damages caused by your default. However, if, for any reason, you are unable to occupy your apartment home after you have signed this Lease but before the Lease Begin Date, you have the right to make us an offer to terminate this Lease (whether this is your initial Lease or a renewal Lease with us) by sending us a written notice offer prior to the Lease Begin Date that is accompanied by an amount equal to one month's rent. You agree that such Termination Charge will be retained by us as consideration for our having taking off the market and reserved the apartment home for you from the date you sign this Lease Agreement until the date we receive the written notice and termination payment from you. If we accept your written offer and Termination Charge, your obligations under this Lease will terminate effective as of the date we receive such written notice and the termination payment, and we will refund your Security Deposit and, if applicable, Pet Deposit pursuant to the terms of the Security Deposit Agreement. If this termination is prior to your initial Lease term, we will also refund the common area/amenity charge that was paid. We will not refund any other charges.

8. **Who should I contact if I have questions or concerns regarding this Lease, my Apartment or the Community?**

If you have questions or concerns regarding this Lease, your Apartment or the Community, you should contact a representative of the Manager. You can stop by the leasing office during office hours, which are posted, or call the phone number listed on Document 3 (the Community Specific Terms) attached to these Questions and Answers and made a part of your Lease. For formal legal issues relating to the Lease or your residence at the Community, please send any notices in accordance with the answer to Question 53 below.

*My Financial Obligations Under the Lease*

9. **Who is responsible for paying the Rent and meeting other Resident obligations?**

Each of the Residents is responsible (on a joint and several basis) for paying all of the Rent and meeting all of the other obligations of the Residents under this Lease. This means that if one Resident does not pay his or her share of the Rent or perform the other obligations of the Resident under this Lease, the other Residents are responsible for paying the full amount of the Rent or performing those obligations.

10. **What is my Rent under the Lease?**

All payments of any kind under this Lease are considered Rent and must be paid without notice, demand, offset, deduction or recoupment.

11. **What are my monthly financial obligations to the Owner and Manager under the Lease?**

Your monthly financial obligations to Owner and Manager under the Lease consist of your Base Rent for your Apartment and the recurring charges for any Garage or Storage Unit you are leasing, together with all other Recurring Monthly Charges identified in the Summary. **The total amount you must pay monthly is provided for you on the last page of the Summary and is called "Total Monthly Charges."**

If the Lease Begin Date on the Summary is other than the first day of a month, your first month's Rent will be prorated, and is identified in the Summary as "First Month Proration". If the Lease End Date on the Summary is other than the last day of a month, your last month's Rent will also be prorated and you will be provided with the prorated amount prior to the date such last month's Rent is due.

12. **Will I have any other financial obligations to Owner and Manager under the Lease?**

In addition to the Total Monthly Charges, you will be responsible for the following as additional Rent, if applicable as noted in the Summary ("Additional Rent"):

a. <u>Late Charge</u>: If your Rent is not paid before the Late Charge Date identified in the Summary, a Late Charge in the amount specified in the Summary will be due immediately as additional Rent. In the event of such late payment, we reserve the right to require that both the Rent and the Late Charge must be in the form of a money order, cashier's check or certified check. By signing this Lease, you are indicating that you understand and agree that the Late Charge is fair, reasonable and acceptable compensation to us, for the expenses and harm that we suffer when your Rent is not paid on time. You also acknowledge that it would be extremely difficult and burdensome for us to calculate, assess and collect compensation for such expenses and harm each time there is a delay in receiving your Rent.

b. <u>Returned Check Fee</u>: If you send us a personal check (for your Rent, Other Charges, Security Deposit or any other reason) and when we deposit the check it is returned for "insufficient funds" or for any other reason, you agree to pay the Returned Check Fee specified in the Summary as compensation for our expenses in processing the returned check. You will also be liable for any Late Charge incurred as a result of the check being returned. The Returned Check Fee is due with the redeeming payment.

c. <u>Monthly Pet Rent</u>: If we permit pets (as provided in Document 4 (the Community Policies)) and you elect to keep a pet or pets, you agree to pay, as additional Rent, for each animal, bird, or pet of any kind that is to be kept in or about your Apartment, the Monthly Pet Rent in the amount specified in the Summary. The Monthly Pet Rent is to be paid each month with your Rent.

d. <u>Reimbursements</u>: You are required to immediately reimburse us for the full amount of any loss, property damage or costs of repairs or service caused by negligence or improper use of the Premises by you, your household members, guests, invitees, agents or pets. These amounts include any damages or costs we suffer that are caused by a breach by you of any provision of the Lease. Any reimbursement you owe will be due immediately upon demand by us.

e. <u>Utilities</u>: You may be responsible for paying for one or more utility services to your Apartment. See the section on "Utilities" below for more information.

f. <u>Unreturned Keys</u>: If you fail to return keys, remotes or other access devices that we give to you, you must pay any associated replacement costs.

g. <u>Month-To-Month Premium</u>: If you are or become a Month-to-Month resident, in additional to all other amounts due under this Lease, you will be required to pay the then current market rent for your Apartment that we determine in our sole discretion, plus the Community's then prevailing Month-to-Month premium if any. We will provide you with a new Summary specifying the market rent and the amount of such Month- to-Month premium.

h. <u>Additional Amounts</u>: You will also be required to pay any other amounts set forth in the Summary, required by other provisions of this Lease, or payable in accordance with Community policies.

13. **Where and when do I pay my Rent?**

Your Monthly Rent is due on or before the first day of each month. Ordinarily, as long as you remain current in your financial obligations, you may choose to pay your rent by check, money order or cashier's check **made payable as provided in Document 3 (Community Specific Terms)**.

You may make your Rent payment electronically. It's easy to enroll in the on-line recurring bank debit program.

- Log on to www.avalonaccess.com
- Click the "Pay Your Rent" tab
- Click the "Recurring Payments" sublink
- Complete the required information
- Click "Submit"

Unless otherwise directed by the Manager or the Owner, your payment must be sent to the address provided to you by the Community and received by us by the due date. We are not obligated to accept partial or late

*RB   JT*

payments of Rent but may elect to do so, at our sole option. Our acceptance of any partial payment does not relieve you of your obligation to pay the outstanding balance due. Payments made by check may be processed using electronic check conversion. By sending your check to us, you authorize us to copy your check and use the account information from your check to make an electronic fund transfer from your account in the same amount as the check.

We reserve the right to require that any Rent that is paid after the Late Charge Date must be in the form of a money order, cashier's check, or certified check. If you give us a check that is returned for "insufficient funds" or for any other reason, you may be required to pay all Rent by money order, cashier's check or certified check.

Your Rent payments will be credited to your account on the date they are processed by us, provided your check is not returned. Any Rent payment received after legal action has been initiated by us may be accepted, with or without written reservation of our rights, and will be applied to delinquent Rent due.

14. **Will my financial obligations change during the Lease term?**

While we have no current plans to increase or decrease your financial obligations during your Lease term, occasionally circumstances change and an additional fee or charge is assessed against the Community, such as additional taxes or utility fees. Where we are permitted by applicable law to pass these fees or charges through to the residents of the Community, we may elect to do so by providing you with written notice in accordance with any applicable laws. In particular, if a sales tax is implemented or increased and is applicable to your rental of the Apartment or a Garage or Storage Unit, you agree that we will have the right to pass that new or increased sales tax on to you.

15. **Am I required to pay a security deposit?**

You are required to pay the Security Deposit as set forth under "Summary of Required Deposits" on the Lease Summary. We will hold this amount to secure the performance of your obligations under the Lease, in accordance with applicable law and the terms of the Security Deposit Agreement that you sign at the same time as, and incorporated by reference into, this Lease. You may not apply this amount to the payment of Rent or other charges.

*Rules and Regulations*

16. **What rules and regulations will apply during the Lease term?**

You and your household members, guests, invitees and agents are required to comply with all reasonable rules and regulations made now or later by us pertaining to the Community. These rules include both (i) Document 4 (the Community Policies), and (ii) rules and regulations posted at the Community from time to time. You must obey all laws and ordinances applicable to your Apartment and the Community, and you, your household members, guests, invitees, agents and pets must not be disorderly or disturb other residents.

17. **Are there any general behavioral guidelines?**

You must, and must cause your household members, guests, invitees, agents and pets, to (i) show due consideration for neighbors and not interfere with, disturb or threaten the rights, comfort, health, safety, convenience, quiet enjoyment and use of the Community by us, other residents and occupants and any of their guests, invitees or agents, (ii) not engage in abusive conduct toward us or our employees or agents, or (iii) not unreasonably interfere with our management of the Community.

18. **What if I don't follow the rules and regulations?**

As noted in the answer to Question 21 below, violations of any rules and regulations are a default under the Lease and, in addition to any other rights we may have, we have the right to terminate the Lease and take possession of the Apartment in accordance with applicable law. Notwithstanding any other provision of this Lease, under no circumstances are you entitled to a cure period for a violation of law or any criminal activity.

19. **What if my guests or other Occupants don't follow the rules and regulations?**

You are responsible for the behavior of your guests, invitees, pets and other Occupants of your Apartment. We have the right to exclude from the Community any person who violates any of the rules and regulations or who unreasonably disturbs other residents or any of their guests or invitees or any of our employees or agents. In addition, we may exclude from any common area of the Community a person who refuses to show photo identification or refuses to identify himself or herself as a Resident, Occupant, or a guest, agent or invitee of a specific Resident.

*Default Provisions*

20. **When will I be in default under this Lease?**

*RB   JT*

You will be in default under this Lease if you do not timely comply with any of the terms of this Lease, including without limitation Document 4 (the Community Policies) as amended from time to time, subject to any notice or cure periods identified on Document 3 (the Community Specific Terms).

**21. What are the consequences of being in default under this Lease?**

If you are in default, we have many remedies under this Lease, including the right to terminate this Lease. In addition, you agree to pay us all costs and fees, including attorney's fees, litigation and collection costs that we incur in enforcing our rights under this Lease, to the fullest extent to which we are entitled to collect such sums from you under applicable law. If permitted by law, such costs shall include a Preparation Fee ("Preparation Fee") for the cost of preparing a summons, complaint or other appropriate legal documents, which may be prepared at any time after Rent becomes due and owing. The Preparation Fee is non-refundable, and is due if Rent is not paid on time and such other documentation is prepared. It is generally our policy that the Preparation Fee must be paid with all other Rent due in order for the legal action to be terminated, although we are not required to terminate the legal action in any case.

If you do not pay Rent as required by this Lease, or you are otherwise in default, and we recover possession of the Apartment, whether by an eviction proceeding or otherwise, you will remain liable for our actual damages due to your breach of this Lease. Actual damages may include, without limitation, a claim for Rent that would have accrued through the end of the Lease Term or until a new tenant starts paying Rent under a new lease for the Apartment, whichever occurs first. If, in an effort to mitigate our damages, we reasonably re-rent your Apartment at a lower rental rate, actual damages for which we seek reimbursement may also include the reduction in rent we receive during the remainder of your original Lease Term.

If at any time you are in default under this Lease, or have given us good cause for your eviction pursuant to applicable law, we are entitled to reenter the Apartment as permitted by applicable law. If you continue to occupy the Apartment we are entitled to proceed by a summary dispossession proceeding, or by any other method permitted by applicable law, and to remove all persons from possession of the Apartment as permitted by applicable law.

*Utilities*

**22. Who is responsible for paying for utility services to the Apartment?**

We will pay for the utility services to your Apartment that are marked "yes" on the Summary under "Owner Utility Obligations" and the costs for those utility services are included in your Base Rent. You will be responsible for paying costs for or associated with all other utility services ("Utility Charges"), as described below as additional rent. You understand that we are not a utility company and you agree that we are not liable for any inconvenience or harm caused by any stoppage or reduction of utilities beyond our control.

**23. How will I be billed for utilities that are not included in my Base Rent?**

For each utility that is not included in your Rent, you will be charged for the availability and/or usage of the utility through either "Direct Utility Billing" or "Allocated Billing", as described more fully below as additional rent:

(i) Direct Utility Billing – The utility provider will bill you directly on a separate metering and billing basis. It is your sole responsibility to initiate such service in your name before accepting the Apartment (or after we discontinue service), and to terminate the service prior to vacating the Apartment. Your community consultant can provide you with information about local utility companies and how to initiate service. If you fail to initiate such service in your name, we may bill you (either directly or through a billing company with which we have contracted) for any utility service you receive which is charged to us. Such bills may include a reasonable administrative fee as additional rent. You hereby authorize us to serve as your agent to receive copies of your utility billing records directly from the utility provider.

(ii) Allocated Billing - We or our billing agent will allocate and bill you directly for a portion of the utility charges we incur for the whole Community, with your allocated portion determined on a sub-metering, square footage or other billing basis, as described in more detail under "Utility Billing Methodology" on Document 3 (the Community Specific Terms). Such bills may include an administrative fee from our billing agent. If so, the maximum amount of the administrative fee is identified on Document 3 (the Community Specific Terms).

In the case of Allocated Billing, your community consultant can share with you the approximate Utility Charges for utility service for your Apartment based on historical amounts, but we cannot guarantee what your charges will be and they will vary based on the factors described on Document 3 (the Community Specific Terms).

In the case of Allocated Billing, subject to applicable law, we may modify the Utility Billing Methodology by which your allocated portion of the bill is determined for any utility during the term of this Lease by providing you with at least thirty (30) days' prior written notice of such modification. This includes, but is not limited to, submetering the Apartment for certain utility services. All amounts

*RB   JT*

due from you for Allocated Billing, determined as provided on Document 3 (the Community Specific Terms), must be paid by the due date specified on the bill.  In addition, failure to pay a bill for Utility Charges from us when due will be failure to pay Rent, triggering all of our remedies for non-payment of Rent set forth in this Lease and under applicable law.  You agree that, unless prohibited by applicable law, we will subtract from your security deposit the amount of your final bill for Utility Charges and unpaid balance due.

You agree to pay all Utility Charges during the term of this Lease, including any utility deposits.  Further, to the extent permitted by law, if you fail to pay Utility Charges, and we are assessed by the utility company for these Utility Charges, then we may pay these assessments to such utility company and subtract a like amount from your Security Deposit.  Further, if you fail to pay Utility Charges, and power to your Apartment is cut off by the utility provider, you will be in default under this Lease.

You acknowledge that we are not a utility company and we are not responsible for the supply of utility services or water to your Apartment, even for those services for which you are billed on an Allocated Billing basis.  In the event of interruption or failure of utility or water service provided to the Community by the local utility or water company, including but not limited to an inadequate supply, poor pressure and/or poor quality, you will look solely to the local utility or water company for any damages you incur and you waive any claim against us, subject to applicable law.

24.   **Do I have to contact any utility companies?**

Yes.  You must contract directly with the appropriate utility company for each utility service not provided at our expense (i.e., marked "no" under "Owner Utility Obligations" on the Summary or otherwise discontinued by us during the term of the Lease).

*Care of my Apartment and Responsibilities Relating to my Apartment and Community*

25.   **Should I inspect my Apartment when I move in?**

Yes.  At the time you first occupy your Apartment or within five (5) business days after your Move-In Date, you should complete an itemized "Move-In Inspection Report" (on a form provided by us) detailing all damages to your Apartment existing at the time you move in.  Both you and we will initial the completed form and you may keep a copy.  Completing this Move-In Inspection Report will protect you and help ensure that you are not charged on move out for any damages to the Apartment that existed before you moved in.  If you do not complete and return the Move-In Inspection Report within five (5) business days after your Move-In Date, we may treat such failure as your representation to us that there are no damages and defects in your Apartment and the cost to repair any damages found after you move out will be deducted from your security deposit.  If we disagree with any damages or defects you list on your Move-In Inspection Report, we will let you know within five (5) business days after we receive the completed Move-In Inspection Report from you.

26.   **Will you provide me with light bulbs?**

When you move in, we will furnish light bulbs and tubes of prescribed wattage for the light fixtures located in your Apartment.  After that date, you agree, at your expense, to replace light bulbs and tubes in your Apartment.

27.   **What are my general responsibilities in caring for my Apartment and the Community?**

You are responsible for using reasonable diligence in caring for the Premises and agree to maintain the Apartment, together with the furniture, furnishings and other personal property, if any, provided by us, in as good condition as they were at the start of this Lease except for ordinary wear and tear.  No holes are to be driven into the cabinets, woodwork, ceilings or floors.  Holes are permitted in walls for wall hangings only.  No change of locks or additional locks are permitted except by our prior written consent.  You may not remove any fixtures, or any of our furniture or furnishings from the Premises for any purpose.  You may not tamper with or disable any fans or water saving devices.  You acknowledge that on the Move-In Date all smoke detectors and carbon monoxide detectors (if any) were present and were in good working order, and that after that date, you will maintain any smoke and carbon monoxide detectors and replace any batteries when necessary.

28.   **What are my responsibilities to heat and cool my Apartment?**

During the heating season you are required to keep the Apartment thermostat at no less than 55 degrees Fahrenheit and during the cooling season you are required to run the air conditioning enough to prevent the accumulation of moisture.  You will be liable for damages to your Apartment and other parts of the Community that result from your failure to comply with these requirements.

29.   **Can I make any changes or improvements to my Apartment?**

You may only make changes or improvements to your Apartment with our prior written consent in our sole discretion and at your sole cost and expense.  You understand and agree that all fixture improvements

*RB   JT*

XPS Print Error

| | |
|---|---|
| Job name: | (none) |
| Document name: | (none) |
| Page number: | 28 |
| Error: | memory allocation failure (19,2,39) |

Community, or from any activity, work or thing done by you, your household members, guests, invitees or agents or by any pet in or about the Apartment or the Community (including legal fees and court costs we incur). This indemnity by you covers any claims for damages or loss to property or injury to persons arising from or based upon any potentially health-affecting substances or forms of energy brought or allowed to be brought into the Community by you or your household members, guests, invitees or agents, or by any other person living in, occupying or using your Apartment.

**The Owner/Manager Affiliates will not be liable for personal injury or damage or loss of your personal property (furniture, jewelry, clothing, automobiles, food or medication in the refrigerator, etc.) resulting from theft, vandalism, fire, water, rain, snow, ice, earthquakes, storms, sewage, streams, gas, electricity, smoke, explosions, sonic booms, or other causes resulting from any breakage or malfunction of any pipes, plumbing fixtures, air conditioner, or appliances, unless it is due to our negligent failure to perform, or negligent performance of, a duty imposed by applicable law. The Owner/Manager Affiliates will not be liable to you due to any interruption or curtailment of heat, hot water, air conditioning or any other service furnished to you, except as provided by applicable law. You may not withhold any Rent, nor will Rent be abated, as a result of such interruption or curtailment. In no event will the Owner/Manager Affiliates be liable, at law or in equity, for indirect, incidental, special, punitive or consequential damages, however arising, whether based on contract, tort, warranty or any other legal theory, even if the Owner/Manager Affiliates have been advised of the possibility of such damages.**

Your obligation to indemnify, defend and hold the Owner/Manager Affiliates harmless includes, but is not limited to, liabilities arising from the use of the amenity areas and health facilities, if any, at the Community, by you, your household members, guests, invitees and agents and other persons you allow to use such areas or facilities. Except as required by applicable law, none of the Owner/Manager Affiliates will be liable for any claims, causes of action or damages arising out of personal injury, property damage or loss that may be sustained in connection with the amenity areas and health facilities either by you or by any persons you allow to use such areas or facilities. You and any person you allow to use such areas or facilities assume all risk in using such areas and facilities and confirm that approval from a physician, if warranted, has been obtained.

42. **Whose responsibility is it if I ask one of Owner's or Manager's employees for extra help?**

We encourage you to hire professionals for your needs beyond those provided by us as your landlord. However, we recognize that there may be occasions when you ask our employees to render services, such as moving automobiles, handling furniture, cleaning, or any other services not expressly contemplated in the Lease. We and our employees are not obligated to render any such personal service. However, if an employee does assist you with any such kind of service the employee will be deemed to be your agent or employee (and not ours) with regard to that service, regardless of whether payment is made for such service, except as otherwise provided by law. To the extent permissible under applicable laws, you indemnify and hold Owner/Manager Affiliates harmless from all losses they may suffer under such circumstances.

*Matters Relating to Moving Out*

43. **How does your 30 day guarantee work?**

We are committed to your enjoyment of your new apartment and your new community. If, for any reason, you are unhappy with your apartment home during the first thirty (30) days of residency (from the date you first move into the Community or the Lease-Begin Date, whichever occurs first), and wish to move, please notify us. You must provide thirty-days prior written notice to us of your intent to vacate, and you must vacate your apartment home prior to the end of such thirty-day notice period. You must also pay Rent from the Lease-Begin Date through the end of the thirty-day notice period or until you vacate the apartment, whichever is later (the "Termination Date"). If you provide written notice and pay Rent as required, your obligations under this Lease will terminate on the Termination Date and we will refund your Security Deposit and, if applicable, Pet Deposit (less any damages or Rent you owe) pursuant to the terms of the Security Deposit Agreement. We will also refund the common area/amenity charge and the one-time non-refundable pet charge that was paid. We will not refund any other charges. This Move-In Guarantee does not apply to any lease renewal or to anyone that has previously rented an apartment in the Community.

44. **What if I want to end my Lease early but I make this decision after the first thirty days?**

If you want to end your lease early you must provide a 30 day written notice to terminate and pay an "Early Termination Charge" of up to two (2) month's rent. Your termination notice will not be effective unless accompanied by the termination charge. After the notice and charge are received we will change your Lease End Date and retain the "Early Termination Charge". Termination notices will not be accepted if you are in default. During the notice period you must comply with all other terms of the Lease, including timely payment of Rent and Other Charges prior to the new Lease End Date and you must vacate the Apartment on or before the new Lease End Date. You will remain liable for all Rent, Other Charges and other sums that arise before the new Lease End Date or that arise on account of your residency with us or your failure to pay us any amounts owed.

If you fail to pay the "Early Termination Charge" you will remain liable for rent and other charges through the original Lease End Date or until the date a new resident occupies and begins paying Rent for your

*RB    JT*

Apartment.  You have committed to pay Rent and Other Charges through the Lease End Date.  You may also be liable for any rent damages we may incur, which may include the difference between your rent and the market rent for a new lease for your apartment, if lower.  In addition, if you received a concession, a pro-rated portion of this will be billed back to you.  We will use reasonable efforts to rent your Apartment in order to minimize the damages caused to us by your default, but we will be under no obligation to encourage prospective residents to rent your Apartment in preference to other vacant apartments.

**45.   Will I have to pay back any concessions I received?**

Yes.  Lease concessions, if any, that you received on entering into this Lease are contingent upon your fulfilling all of the terms of this Lease through the original Lease End Date.  If this Lease is terminated for any reason prior to the original Lease End Date, including, but not limited to, your default or early termination of this Lease, then you will be obligated to pay back to us a pro rata portion of any Lease concession received by you.

**46.   Are there any special rules for members of the military?**

Yes.  In the event you are or become a member of the Armed Forces on extended active duty, a member of the state National Guard serving on full-time duty, or a civil service technician with a National Guard Unit, and you:  (i) receive permanent change-of-duty orders;  (ii) receive temporary duty orders in excess of 3 months' duration; or (iii) are ordered to report to government-supplied quarters which results in the loss of your basic allowance for living quarters, you and your dependants may terminate this Lease by giving prior written notice to us, provided you are not otherwise in default.  The termination will be effective on the last day of the month following the notice.  As a condition to such termination, you will furnish us with a certified copy of the official orders which warrant termination of this Lease.  Military orders merely authorizing base housing in the local area in which the Community is located do not constitute change-of-duty hereunder.  Your Security Deposit will be refunded provided that the conditions of the Security Deposit Agreement are fulfilled.

Additionally, National Guard officers and enlisted members called or ordered into active state or federal service, or United States Military Reserve reservists who are called to full-time active duty, may terminate this Lease under California law if they are called into duty after entering into this Lease.  If termination occurs under California law, the termination will be effective on (1) the last day of the month following the notice, or (2) no more than 45 days after the notice is provided to us, whichever is first.  If rent is payable other than monthly,  the termination will be effective on the last day of the month following the month in which the notice is given.

**47.   What if I don't move out by the Lease End Date?**

As noted in the answer to Question 6 above, we may allow you to remain as a Month-to-Month resident.  However, if we do not choose, in our sole discretion, to let you remain, you will be liable for our direct and consequential damages, costs and reasonable attorneys' fees as permitted by applicable law in connection with your holding over and with our actions in obtaining possession of the Apartment as a result of your holding over.

**48.   When should I turn in my keys?**

When you vacate your Apartment (after having given us the notice required in accordance with the terms of this Lease) you must deliver your keys to us.  Do not leave the keys in your Apartment.  If you do not deliver the keys to us at the end of your lease term (or notify us in writing that you are unable to do so because your keys are lost) then, at our option, the Lease will continue in full force and effect until such time as you deliver the keys to us (or notify us in writing).  In such event you will continue to be liable to us for the payment of Rent and all other obligations under this Lease, subject to applicable law.  Delivery of your keys to us before the end of your lease term will not terminate this Lease.

**49.   Do I have to clean the Apartment when I leave?**

When you leave the Apartment, it must be clean and in the same condition it was in when you received it, except for ordinary wear and tear and for damage caused by fire or other casualty that was not your fault or the fault of your household members, guests, invitees, agents or pets.  If not, you will be required to pay the cost of (1) labor for cleaning the stove, refrigerator, kitchen, bathroom and other parts of the Apartment (including carpet cleaning), (2) removing trash or other property left or abandoned in or around the Apartment, (3) painting the Apartment to cover dirt or stains beyond ordinary wear and tear or paint installed by you, (4) removing wallpaper you installed, (5) repairing or replacing any portion of the Apartment or our property that was damaged, removed or altered in any manner, (6) repairing, replacing or restoring personal property, and (7) any other work that is required to return the Apartment to the condition it was in when you received it, subject to ordinary wear and tear.  We may deduct these amounts from your Security Deposit, subject to applicable law.

**50.   What is "ordinary wear and tear"?**

While it would be impossible to provide every example of ordinary wear and tear, the basic idea is that

*RB   JT*

ordinary wear and tear is the level of wear on the Apartment that could be caused by a reasonably careful occupant of the Apartment over the course of a lease term if (i) no accidents occurred (e.g., spills on carpets) and (ii) the Apartment, including its appliances and fixtures, were thoroughly cleaned at the end of the lease term to the condition in which it was delivered to you.  Ordinary wear and tear, for which you will not be charged, includes, but is not limited to, such items as wear on the carpet in high traffic areas, curtains or paint faded by the sun.  Damages for which you will responsible, on the other hand, include such things as stains and rips in the carpet, rips in curtains, marks on walls, missing or broken mini blinds and light switches, and baked on debris on kitchen appliances.  You may want to consult with the leasing office at the Community regarding move out procedures and advice with respect to inspections and deductions.

**51.   What if I leave my personal property in the Apartment when I move out?**

If you leave items of personal property in or around your Apartment after the term of this Lease has ended and delivery of possession has occurred, or if your Apartment appears to be abandoned, your property will be considered abandoned and we may sell or dispose of it in accordance with applicable legal requirements.

*Miscellaneous*

**52.   How will you provide notice to me when it is required?**

We can give you written notice by (a) personal service to you, or (b) posting the notice on your Apartment door and mailing a second copy or (c) delivery to someone of suitable age and discretion and mailing a second copy, or (d) where permitted by law, by sending you an email.  Notices for rent increases and entry may be serviced personally or sent by first class mail.  You will be deemed to have received the notice given in any of these ways, whether or not you actually receive the notice.  Please note that our primary means of communication with our residents, except where otherwise required by law, is email. Therefore, it is very important that we have a current and correct email address for each Resident.  If you do not have an email, please let us know and check in with the office to see whether any email communications have gone out that you should be aware of.  By signing this Lease, you expressly permit us, our agents and assignees, including but not limited to debt collection agencies retained by us for collection work, to use an automated dialing device to place calls to cellular devices owned or to be owned by you.

**53.   How should I provide formal legal notice to you?**

Any notice from you to us must be in writing and may be given by (i) mailing it to us at the Community address, or (ii) delivering the notice to the Community Manager or Customer Service Manager at the Community's leasing office during normal business hours.  You agree that we may (but are not obligated to) treat notices and requests from any Resident as notice from all Residents and Occupants.

**54.   Are there any third party rights that could affect the Community or my Apartment?**

a.   <u>Condemnation:</u>      If the whole or any part of your Apartment is taken by condemnation or under the power of eminent domain, this Lease will automatically terminate on the date you are required to surrender possession to the condemning authority and you will not be entitled to any portion of the proceeds of any condemnation award or payment.

b.   <u>Sale of the Community or Your Apartment</u>:  The sale of the Community or your Apartment, including a sale by foreclosure, will not affect this Lease or any of your obligations under the Lease.  You agree that upon the sale of the Community or your Apartment, you will look solely to the new owner for the performance of the landlord's duties under this Lease and will be deemed to have released the Owner/Manager Affiliates from all liabilities arising after the date of such sale.  Upon notice of our transfer of your Security Deposit and/or Pet Deposit to the new owner, you will look solely to the new owner for the return of the unapplied portion of your Security Deposit or Pet Deposit.

c.   <u>Subordination</u>: This Lease, and your rights hereunder, are subordinate to all land leases, present and future mortgages or deeds of trust, if any, affecting the Premises.  We may execute any papers on your behalf as your attorney-in-fact to accomplish this if permitted under applicable law.  In the event of any judicial or non-judicial foreclosure of the Premises, at the election of the acquiring foreclosure purchaser, the Lease shall not be terminated and you shall attorn to the purchaser, provided that the purchaser in that election agrees not to disturb you if you are complying with this Lease.

**55.   What other general provisions apply to this Lease?**

This Lease (consisting of all of the documents identified in the Introduction) is the complete agreement between you and us.  You may not rely on any oral promises of the Owner, Manager or any other party that are not set forth in this Lease.  This Lease can only be changed by an agreement in writing, signed by you and us.  This Lease will be binding upon the successors and assigns of each Resident.  Time is of the essence in your obligations under this Lease.  If permitted by law, you waive the right to a jury trial in all legal proceedings relating to your use and occupancy of your Apartment, and you waive the right to countersue in any summary proceeding we bring.  Should a court of competent jurisdiction find any of this Lease's provisions to be illegal,

*RB   JT*

invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect any of this Lease's other provisions. In addition, such illegal, invalid or unenforceable provision shall be modified to the minimum extent necessary to make such provision legal, valid and enforceable.

Registered Sex Offenders Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

**56. Do the provisions of this Lease survive the Lease End Date and/or the termination of this Lease?**

Your payment obligations under this Lease, as well as your obligation to indemnify and hold the Owner/Manager Affiliates harmless, and our rights upon any default by you, will survive the termination or expiration of this Lease.

**57. If I have a disability, may I request a modification to my apartment or the common areas, or an accommodation to your policies, practices or services?**

Yes. The Owner and Manager want you to enjoy the use of your home, and are committed to compliance with the provisions of the Fair Housing Act, including those provisions relating to reasonable modifications and accommodations. Our policy, including details about how to request such modifications or accommodations, is described on a separate addendum to this Lease.

**58. Does the Owner have the right to make any changes to my apartment?**

You acknowledge that during the Lease Term we may perform "Owner Alterations" to the Premises and the Apartment Community. Owner Alterations include, for example, maintenance, alterations, repairs, asset preservation and improvements. You also acknowledge that you will not be entitled to any withholding or abatement of Rent nor will you be deemed constructively or actually evicted from the Premises based on our performing any Owner Alterations to the Premises or the Apartment Community, unless the Premises are untenantable due to Owner Alterations. You waive any claim or cause of action against us for actual or constructive eviction or for any damages based on Owner Alterations, except to the extent the Premises are rendered untenantable due to Owner Alterations.

*RB   JT*

**IMPORTANT NOTICE: Section 6 of this Lease requires you to provide advance written notice to us if you choose not to renew your Lease.**

**RESIDENT(S):**

| *Janna Thomas* | *09/10/2014* | Janna Thomas |
| Signature | Date | Print Name |

| *Rolando Brock* | *09/10/2014* | Rolando Brock |
| Signature | Date | Print Name |

**AVALONBAY COMMUNITIES, INC.,
MANAGER, AS AGENT FOR OWNER**

By: *Shannon Drogen, 09/11/2014*

**DATE**

*RB   JT*

## CALIFORNIA APARTMENT LEASE AGREEMENT

### COMMUNITY SPECIFIC TERMS

**Community: eaves San Jose II**

**Payment:**

Under the answer to Question 13 of Document 2 of the Lease (Questions and Answers-Additional Lease Terms), you should make all payment checks payable to **AvalonBay Communities, Inc. - eaves San Jose II**.

**Telephone Number:**

The telephone number for contacting our Customer Care Center is 877-AVB-MAIN

**Default Provisions:**

(1) You do not make your payment of Rent, including Additional Rent or other amounts due under this Lease on time, or

(2) You violate or do not comply with any of the terms of this Lease and such violation is not cured by you within 3 days after written notice from us, or

(3) You violate or do not comply with any of the rules and regulations, including the Community Policies, of the Community, as amended from time to time, and such violation is not cured by you within 3 days after written notice from us, or

(4) You either fail to occupy the apartment or abandon the apartment after occupying it, or

(5) You violate your responsibilities as a resident under Federal, state or local law, or

(6) You permit unauthorized persons or unauthorized pets to reside at the apartment and such violation is not cured by you within 3 days after written notice from us, or

(7) You harass, verbally abuse, denigrate or otherwise disrespect our employees, agents or contractors

Notwithstanding the above, under no circumstances are you entitled to any cure period for a default in your monetary obligations under this Lease, a violation of law, or criminal activities as defined in this Lease.

**Electricity Billing Methodology:**

Under the answer to Question 23 of Document 2 of the Lease (Questions and Answers-Additional Lease Terms), electric service will be billed based on Direct Utility Billing and will be billed directly to you by the utility provider. As described in the answer to Question 24, you should contact the utility provider directly to initiate service in your name.

**Water/Sewer Billing Methodology:**

Under the answer to Question 23 of Document 2 of the Lease (Questions and Answers-Additional Lease Terms) your water bills will be billed based on Allocated Billing. Under the Utility Billing Methodology that will initially be used, water charges are calculated each month by taking the water bill for the community, multiplying it by .89 (since 11% of the bill is automatically paid by us to cover the common area water usage), and then applying an allocation formula to the resulting numbers. The allocation formula is based on a factor that is determined based on the occupancy (by number of people as set forth in the Lease for your Apartment) of your Apartment as compared to the total occupancy for the Community. While we recognize that this is a complicated formula, it is applied in a reasonable attempt to be fair in allocating water usage to our residents, including you. You will be charged a flat rate for sewer each month based on the County Tax Bill. You should be aware that under this billing methodology you are responsible for this proportionate share of the Community's water costs regardless of your actual usage, even if you do not use your Apartment for one or more days during any month.

You will receive water bills periodically from a billing company that we have selected (but may elect to change from time to time). Such bills may include an administrative fee that will not exceed $5.00.

In addition, you will receive bills relating to the costs for heating hot water in the Community. Under the Utility Billing Methodology that will initially be used, hot water energy charges are calculated each month by taking the hot water energy bill for the Community, deducting the amounts for the common areas of the Community, and then applying an allocation formula to the resulting numbers. The allocation formula is based on a factor that is determined based on the occupancy (by number of people as set forth in the Lease for your Apartment) of your Apartment as compared to the total occupancy for the Community, or based on actual hot water usage as measured through your individual hot water meter where such meters are installed. While we recognize that this is a complicated formula, it is applied in a reasonable attempt to be fair in allocating hot water usage to our residents, including you. You should be aware that under this billing methodology you are responsible for this proportionate share of the Community's hot water energy costs regardless of your actual usage, even if you do not use your Apartment for one or more days during any month.

*RB   JT*

You will receive hot water energy bills periodically from a billing company that we have selected (but may elect to change from time to time).

**Trash Removal:**

You agree to pay Trash Removal Rent each month in the amount specified in the Summary (Document 1), which is due and payable with your Rent.

**Compliance with Non-Smoking Ordinance:**

It is a material breach of this Lease for you, any Occupant, or any other person that you invite or allow to be present at the Community to:
  (i)     smoke in any common area of the Community;
  (ii)    smoke in any apartment home on or after February 9, 2012; or
  (iii)   violate any law regulating smoking anywhere at the Community

The only places that smoking will be permitted at the Community will be identified on a site map available upon request at the Community leasing office.

You acknowledge and agree that all other residents of the Community are third party beneficiaries of the non-smoking regulations, and that any other resident of the Community shall have the right to sue another resident to enforce the non-smoking provisions of this Lease, but only the Owner or Manager shall have the right to bring an action for eviction.

**RESIDENT(S):**

_Janna Thomas_ _____     _09/10/2014_ _____     Janna Thomas _____
Signature                                          Date                               Print Name

_Rolando Brock_ _____     _09/10/2014_ _____     Rolando Brock _____
Signature                                          Date                               Print Name

**AVALONBAY COMMUNITIES, INC.,**
**MANAGER, AS AGENT FOR OWNER**

By: _Shannon Drogen, 09/11/2014_ _____
                                                        **DATE**

*RB   JT*

**AvalonBay Policy Regarding Requests for Reasonable Modifications and Accommodations**

**Modifications**: Federal housing law permits a resident with a disability to make reasonable modifications at his/her expense to either or both of the interior of the apartment and the common/public areas of the building "if such modifications may be necessary to afford such person full enjoyment of the premises." If a modification is made, the resident may be held responsible for restoring the interior of the apartment to its original condition, where such requirement is reasonable. For the apartment, examples of reasonable modifications include widening a doorway, lowering kitchen cabinets or replacing flooring to facilitate wheelchair use.

An escrow (not a security deposit) may be collected to ensure that funds are available for any required restorations. In considering whether to require an interest-bearing escrow account in the estimated amount of the costs of restoration, the following factors will be considered:

- The nature and extent of the modification;
- The length of residency; and
- The credit/employment history of the resident.

**Accommodations**: Residents with disabilities may request "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." For example, a resident with a disability may request a reserved parking space near a building's entrance even at a community that does not assign parking. An accommodation is considered reasonable if it does not fundamentally alter the owner's business or create undue financial hardship. A reasonable accommodation:

- Must be practical and feasible;
- Cannot be dangerous to others; and
- Cannot be overly expensive to the apartment owner.

**Processing Requests**: To help assure prompt review and attention, we prefer that requests for modification or accommodation be made on our standard Modification and Accommodation Request form, but we will accept other written and verbal requests as well. So that we can make a decision about your request, please tell us how your requested modification or accommodation will help you more fully enjoy your home. All requests will be forwarded to our Legal and Design groups for internal review and will be processed promptly.

*RB  JT*

## SECURITY DEPOSIT AGREEMENT

**Apartment Home <u>1887</u>**

This Security Deposit Agreement (this "Agreement") is made between the undersigned Resident(s) and Manager, as managing agent for Owner, in connection with, and is incorporated by reference into, the Apartment Lease Agreement (the "Lease") of the same date as this Agreement between Manager, as managing agent for Owner, and Resident. In this Agreement, your apartment and the Community are together called "the Premises." The Manager and the Owner are called "we," "us," and "our." The Resident is called "you" and "yours."

1.   **SECURITY DEPOSIT**. We hereby acknowledge receipt from you of the sum of:

| | REQUIRED | PAID | PAYMENT DATE |
|---|---|---|---|
| Security Deposit | <u>$750.00</u> | <u>$750.00</u> | <u>09/07/2014</u> |

which represents the Security Deposit required under the Lease (the "Security Deposit").

2.   **REFUND OF SECURITY DEPOSIT**. We agree to refund the Security Deposit to you, subject to the deductions described in Section 3, upon satisfaction of all of the following conditions or as otherwise required by applicable law:

a.   Complete vacation of the entire Premises by you on or before the date specified in the required written 30-day notice under the Lease.

b.   Expiration of the term of the Lease, or termination of the Lease in accordance with its provisions.

c.   Payment by you of all Rent required under the Lease, up to and including the date of expiration or termination of the term of the Lease, or the full notice period, whichever is longer.

d.   Your apartment, including all kitchen appliances (refrigerator, oven, range, dishwasher, baths, closets, storage areas, patios/balconies, etc.) has been thoroughly cleaned, so as to be in the same condition as it was in on the beginning date of the term of the Lease, except for ordinary wear and tear.

e.   There are no defects or damage to Premises caused by you, your family, guests, invitees, agents or pets, unless shown on a written list of damages and defects as set out in the Move-In Inspection Report, as referenced in the Lease.

f.   Observation and performance by you of all of the other covenants and obligations to be kept or performed by you under the Lease up to and including the date of expiration or termination of the term of the Lease or the date you vacate your apartment, whichever is later.

g.   Observation and performance by you of all rules and regulations to be kept and performed by you under the Lease, including, without limitation, those rules and regulations pertaining to pets.

h.   YOU HAVE GIVEN MANAGER THIRTY (30) DAYS WRITTEN NOTICE OF YOUR INTENT NOT TO RENEW THIS LEASE, AS REQUIRED PURSUANT TO THE LEASE.

i.   You provide us with a written notice of your forwarding address.

3.   **DEDUCTIONS**. Within twenty-one (21) days after you have vacated the Premises, we agree to refund the Security Deposit to you, after deducting all damages or charges for which you are legally liable under the Lease, this Agreement, or as a result of breaching the Lease or the Security Deposit Agreement. At such time, we will provide you with a written statement reflecting the Security Deposit, any accrued interest thereon, if applicable, and, for the deductions made, together with a basis for all deductions we made. In addition, we will notify you in writing of any deductions that are made from the Security Deposit during the course of the tenancy. Such notification will be made within twenty-one (21) days of the date of the determination of the deduction and will itemize the reasons for the deductions, except that this notification will not be required for deductions made less than twenty-one (21) days prior to the termination of the Lease. We will maintain itemized records of all deductions made from the Security Deposit during the preceding two years, and these records will be available for inspection by you or your agent or attorney during our normal business hours.

4.   **WITHHOLDING OF RENT**. You acknowledge that no portion of the Security Deposit is available to be applied to Rent or Other Charges due and payable under the Lease, and that you are required to pay the entire monthly Rent on or before the due date each month during the term of the Lease, including the last month of occupancy.

5.   **MOVE-OUT PROCEDURES**. Upon a request by us to you that you vacate, or within five (5) days after receipt of notice by us of your intent to vacate, we will make reasonable efforts to advise you of your right to be present at an inspection of the Premises for the purpose of determining the amount of the Security Deposit to be returned. If you want to be present when we make the inspection, you must let us know in writing so that we may, in turn, notify you of the time and date of the inspection. If requested, an initial inspection will be made prior to termination of occupancy. A final inspection will be made within seventy-two (72) hours after termination of occupancy and removal of all your personal effects. If you request an initial inspection, we will upon completion of the inspection give you an itemized list of damages to the Premises known to exist at the time of the inspection. We suggest that you do accompany us during both the initial inspection and the final inspection to help resolve any problems that may arise. Failure to do so will constitute a concurrence by you in our assessment of charges for damages or cleaning. After final inspection by us, appropriate charges will be assessed by us for any missing items, damages or repairs to the Premises, or its contents (except for ordinary wear and tear), insufficient light bulbs, scratches, burns, or holes in the walls, doors, floors, draperies, carpets and/or furniture, and for cleaning the Premises (including all kitchen appliances).

*RB   JT*

6.   **INTEREST ON DEPOSIT.**   We will accrue interest on the Security Deposit if required by law at the rate set in applicable statutes, which interest will be credited and paid as required by law.

**RESIDENT(S):**

| | | |
|---|---|---|
| _Janna Thomas_ | _09/10/2014_ | **Janna Thomas** |
| Signature | Date | Print Name |

| | | |
|---|---|---|
| _Rolando Brock_ | _09/10/2014_ | **Rolando Brock** |
| Signature | Date | Print Name |

**AVALONBAY COMMUNITIES, INC., MANAGER AS AGENT FOR OWNER**

BY: _Shannon Drogen, 09/11/2014_
                                                  Date

_RB   JT_

## COMMUNITY POLICIES
### eaves San Jose II

Welcome to your Community!  These policies are designed to promote enjoyment of the Community by you and by your neighbors.  Please read these Community Policies carefully.  As in the Lease, the Manager is called "we," "us" and "our."  The Resident is called "you" and "yours."  Your apartment and the Community, including all buildings, common grounds, amenity and parking areas, are collectively called "the Premises."  These provisions are deemed incorporated into your Lease.

### GENERAL

1. <u>SPEED LIMIT</u>.  Limit your speed within the Community to 10 MPH. Obey all signs and traffic control devices within the community, such as stop signs, fire lanes, directional arrows, etc.

2. <u>VEHICLES</u>.   Recreational vehicles such as boats, campers, trailers, etc. are: ( X ) not permitted; (   ) permitted in designated areas only.  Unsightly and/or inoperable cars (such as cars with flats, broken windows, extensive damage, etc.) and vehicles with expired tags will not be permitted to remain on the Premises.  Vehicles are not to be repaired or serviced on the Premises.  A repair is anything that requires the vehicle to have the hood open or to be up on a jack.  Vehicles may be washed on the Premises in designated area(s) only.  Please do not empty car ashtrays onto the parking lots!  Vehicles may be towed at owner's expense, and without notice, that are (a) not properly registered with the city and state, (b) parked in a fire lane or in a designated "NO PARKING" area, (c) owned by Residents and are parked in Leasing Office and Visitor parking spaces, and/or (d) parked in a space other than the assigned space for that vehicle, where parking spaces have been assigned.  If required, you must register your vehicle with the office.  Motorized scooters may be used only by those of legal driving age and use must comply with all applicable laws and regulations, including those regarding the use of helmets.

3. <u>BALCONIES AND WINDOW TREATMENTS</u>.  Clothes drying of any kind including bathing suits or beach towels on the balcony or in front of your apartment is prohibited. Do not hang "Christmas" type string lights, bamboo privacy screens, brooms, mops, rugs, etc. on your balcony or any outdoor spaces. Mops, clothes, rugs, etc. must not be shaken from balconies or windows. Dirt, debris or water must not be swept over the edge of any balcony. Cigars, cigarettes and other objects shall not be thrown from balconies and windows. Bird feeders, planters and flower boxes, if allowed, must be secure and well maintained so that there is no danger of them falling. No household appliances, mechanical equipment or trash are to be kept on balconies. Unless provided by management, draperies, curtains or blinds must be placed at all windows within two weeks of moving into the apartment. The window coverings visible from the exterior must be lined with a neutral-colored material. Neutral colors are defined as white, off-white, beige and light gray. If the primary draperies or curtains are not of these neutral colors, then they must be lined with neutral colors on the outside. There will be no tin foil, sheets, blankets, or any type of coverings over the windows to darken rooms. However, you may purchase white window shades that will serve the same purpose and still maintain the uniformity of the Community. Air conditioning units are strictly prohibited in any window area of your apartment home.

4. <u>EQUIPMENT</u>.  The equipment in the bathrooms and kitchens is not to be used for any purposes other than that for which it was constructed.  No sweepings, rubbish, rags, disposable diapers, sanitary napkins, tampons, ashes or other obstructive substances shall be thrown therein.  **Do not place metal, string, grease, coffee grounds, rice, pasta, potato peels, nut shells, glass, olive or fruit pits, corn cobs, paper, wire, bones or non-food in disposal.  If you cannot eat it, your disposal cannot eat it!** You are responsible for all damage resulting from the misuse of such equipment and you agree to reimburse us for the costs incurred to repair such equipment and related damages.  Portable washers or dryers not approved in writing by us are prohibited.

5. <u>NOISE</u>.  Be considerate of your neighbor.  Control the volume of radios, stereos, TV's, musical instruments and other amplified devices so that they do not disturb residents of other apartments. From 10:00 PM to 8:00 AM. volume on all such devices should be kept as low as possible.  Further, please do not vacuum or use washers or dryers in your apartment (if present) during such time.  We recommend that stereo speakers not be placed directly on the floor.  Noisy or disorderly conduct that annoys or disturbs other residents will not be permitted.

6. <u>LAUNDRY FACILITIES</u>.  If there are coin operated laundry facilities on the premises, please report to us machines that are not operating properly.  Washers and dryers can be dangerous, so please keep small children away from these machines at all times and never allow them to loiter or play in or around the laundry facilities.  Please do not use the laundry trash receptacles for your household trash.  We appreciate your help to keep the laundry facilities clean.  Clotheslines, and hanging clothes outside to dry, is prohibited.

   When using laundry machines, whether located at a central location on the Premises or in your apartment, please do not wash or dry shoes in the machines.  Shoes may bump up against and damage the machines.  You agree to be responsible for damage resulting from the misuse of the laundry equipment and to reimburse us for the costs incurred to repair the laundry equipment.

7. <u>STORAGE FACILITIES</u>. N/A

8. <u>WALL HANGINGS</u>.  Please use nails suitable for hanging picture frames. Please DO NOT use adhesive hangers, since they damage the wallboard. No holes shall be driven into the cabinets, woodwork, ceiling or floors. Please do not use a nail or any other hanger on wallpaper.

*RB   JT*

Account# CA079-008-1887-8

9.     TRASH. Trash is not to be left outside your apartment or on the balcony or decks, and is not to accumulate in your apartment. Trash containers and/or a trash compactor are located at various places throughout the Community for your convenience. However, do not place trash on the ground if these are full. Simply proceed to the next closest container to dispose of your trash. Boxes must be broken down before being placed in a trash container. Furniture items such as desks, chairs, beds, mattresses, sofas, etc. are not to be left on the Premises for disposal. You are responsible for the removal of these items at your own cost. Residents not complying with these policies regarding trash are subject to being charged for the cost of each bag removed, at the discretion of the Community Manager.

10.     CLUTTER. Hallways and breezeways must be kept clear at all times. Do not obstruct them with trash, boxes, toys, bicycles, baby carriages, plants, etc. Likewise, no such items are permitted in the parking areas, courtyards, sidewalks, or lawns of the building. All such articles will be impounded, and a charge may be made for their return.

11.     GRILLING. California Fire Code prohibits charcoal grills, large propane grills and other open flame cooking devices in apartment communities. With proof of renter's insurance, grilling using an electric grill or propane tank grill with a one pound liquid petroleum gas capacity (typical camping stove) are permitted on balconies and decks. Approved grills may be stored on balconies or decks only after the propane tank is disconnected. Propane tanks cannot be stored inside the apartment home or in the hot water heater closet.

12.     UTILITY CLOSETS. Items placed in utility closets for storage purposes, where permitted, must be nonflammable and located at least two feet from any utility appliance located in the closet. We reserve the right to inspect these areas. Failure to comply with this storage requirement may result in the removal of the items in the closet by us or in the revocation by us of your use of the closet.

13.     NOTICE OF DAMAGE TO PREMISES. Notify us of any damage that in your opinion requires repair, including water and fire damage. Please advise us immediately of spills on carpeting that may cause permanent damage. We may be able to get the stain out if notified promptly.

14.     SMOKING. Smoking is not permitted in any interior or exterior common areas, including the hallways, lobby areas, courtyards, and patio/balconies. Smoking is likewise prohibited in the health and recreational facilities. Cigarette butts are not to be discarded on the Community grounds. DO NOT THROW CIGARETTE BUTTS IN THE MULCH OR IN PROXIMITY TO THE BUILDING. THIS IS A SEVERE FIRE HAZARD.

15.     DRY CLEANING. If this drop-off/pickup service is provided it is done so as a convenience and you agree not to hold us or Owner responsible in the event of loss or damage of any or all of your dry cleaning. You agree to pick up your dry cleaning within 48 hours of notice.

16.     PACKAGES. You authorize us to accept mail/UPS/Federal Express, etc. packages for you. This service is provided as a convenience and you agree not to hold us or Owner responsible for accepting the package in the event of loss, theft or damage to your package. You agree to pick up packages within 48 hours of notice to avoid return. We will not accept certified mail on your behalf.

17.     AMENITY AREAS. Amenity areas (pool, basketball courts, tennis courts, racquetball courts, reading rooms, laundry rooms, business centers, weight room, etc.) are to be utilized for their intended purposes only. Proper-soled shoes must be worn to prevent damage to flooring. Bicycles, skateboards, rollerblades, etc., are not to be used on the pool deck or in parking lots. We reserve the right to deny use of the amenities to any resident found in violation of any of our policies.

18.     AGE REQUIREMENT. Residents under the age of 14 may not use the weights and other potentially dangerous equipment at the fitness center at any time without a parent or responsible adult being present.

19.     WATERBEDS. Waterbeds are permitted (i) with proof of current renter's insurance insuring the Premises against damage from water, for no less than $100,000 of coverage, and (ii) when fully lined, installed, maintained and removed according to manufacturer's recommendations.

20.     HEATERS. Kerosene heaters, or other heaters using combustible materials or fluids, are not permitted on the Premises.

21.     COOKING. You must cook in a manner that will not offend or annoy other residents, and use the oven fans during cooking.

22.     DOORS. Please shut and keep closed all doors leading from and into building at all times. We may close all such doors in the event they are left open.

23.     LOCKOUT. If you request us to unlock the door of your apartment during business hours, we will gladly do so at no charge. If you are locked out of your apartment home after office hours, a Maintenance Associate will let you in. You will be billed a $75 charge only if you have had a previous after hours lock-out.

24.     MOVING. Moving of furniture is permitted to and from the apartments only between the hours of 8:00 A.M. and 6:00 P.M. Moving during such hours is permitted 7 days per week. Any packing cases, barrels or boxes which are used in moving must be removed by you. If packing cases, barrels, boxes or other containers are removed by us, you will be billed for the cost of such removal.

*RB   JT*

25. <u>SAFEKEEPING OF ARTICLES</u>. Our associates, other than as specifically set forth in these Community Policies dealing with dry cleaning and packages, are not authorized to accept keys or other articles. If packages, keys, or other articles are left with the employees of this Community, the sole risk of loss or damage is upon you.

26. <u>BICYCLES</u>. Bicycles are to be stored at your own risk. **Bicycles are not to be stored in the breezeways.** Bicycles are not to be moved through the lobby or elevators.

27. <u>WIRING</u>. Do not install any wiring in or outside of the Premises or install any aerial for television or radio on the roof or exterior of building.

28. <u>WEIGHT LIMITATION</u>. Do not keep anything in your apartment that, in our sole judgment, exceeds the permissible load or jeopardizes the safety of the floors or structure. You agree to remove immediately any such item upon demand in writing from us.

29. <u>RECYCLING</u>. You agree to cooperate with any and all recycling programs that we put in place or which are required by law.

30. <u>EXTERMINATION</u>. You agree to, upon our request, permit us to exterminate pests in your apartment and you will take all steps that may be necessary to permit us to perform such extermination.

31. <u>SOLICITATIONS</u>. Door-to-door solicitation and/or circulation of any materials is prohibited. Please report solicitors to our office.

32. <u>LIGHTBULBS</u>. Electric light bulbs are supplied to each apartment home at the time of move-in. Thereafter, it becomes your responsibility to replace all bulbs.

33. <u>SMOKE DETECTORS</u>. You will maintain the smoke detectors and replace the batteries when necessary.

34. <u>GUESTS</u>. You agree to inform your guests of all Lease provisions and Community Policies regarding use of the Premises. We have the right to bar individuals from the Premises. If your Lease provisions or the Community Policies are violated by your guests, they may be barred and, in the event they receive from us a notice that they have been barred from the premises, arrested for trespassing. If you allow any barred person on the premises, it is grounds for termination of your Lease.

35. <u>GARAGES</u>. If applicable, the primary purpose for any garage is for the storage of vehicles. Once your vehicle has been accommodated in the garage, you may, if approved by management, use the remaining space to store non-flammable items. In no event should your garage space be used only for storage and no storage is permitted in underground or above ground parking structures shared by multiple apartments. AvalonBay Communities in no way represents that the garages, whether direct-access or detached, can accommodate every make and model of every vehicle. It is the resident's responsibility to ensure the garage they are renting can accommodate their current vehicle or any vehicle they may have in the future. Residents renting a garage, whether direct access or detached, must use both garage and driveway for parking and will not be permitted to park vehicles in the parking lot. In the event that the resident has an additional vehicle, this vehicle will be issued a specific sticker for lot parking. It is the resident's responsibility to ensure that garage doors remain closed when the garage is not in use.

## SATELLITE DISHES

You have a limited right to install a satellite dish or receiving antenna within your leased space. We are allowed to impose reasonable restrictions relating to such installation. You are required to comply with these restrictions as a condition of installing such equipment. This provision contains the restrictions that you and we agree to follow.

1. <u>NUMBER AND SIZE</u>. You may install only one satellite dish or receiving antenna within your leased space. A satellite dish may not exceed 3.3 feet in diameter. An antenna may receive but not transmit signals.

2. <u>LOCATION</u>. Location of the satellite dish or antenna is limited to your leased space, namely: (1) inside your dwelling, or (2) in an area outside your dwelling but within your sole control such as your balcony, patio, yard, etc. Installation is not permitted on any parking area, roof, exterior wall, window, windowsill, fence or common area, or in any area that other residents are allowed to use. A satellite dish or antenna may not extend beyond the vertical and horizontal space that is leased to you for your exclusive use (e.g., the satellite dish or receiving antenna may not extend beyond the balcony railing). Think of it this way: if the building were to be wrapped in "plastic wrap", and you were to affix a satellite dish to your balcony railing or otherwise place it on your balcony, no portion of the satellite dish or receiving antenna may come in contact with the plastic wrap.

3. <u>SAFETY AND NON-INTERFERENCE</u>. Your installation: (1) must comply with reasonable safety standards; (2) may not interfere with our cable, telephone or electrical systems or those of neighboring properties; (3) may not be connected to our telecommunication systems; and (4) may not be connected to our electrical system except by plugging into a 110-volt duplex receptacle. If the satellite dish or antenna is placed in a permitted outside area, it must be safely secured by one of three methods: (1) securely attaching it to a portable, heavy object such as a small slab of concrete in a container; (2) clamping it to a part of the building's exterior that lies within your leased premises (such as a balcony or patio railing); or

*RB   JT*

Account# CA079-008-1887-8

(3) any other method approved by us.  No other methods are allowed.  Your satellite dish or antenna system must be a stand-alone system; you may not splice into any existing wires or cables.  We may require reasonable screening of the satellite dish or antenna by plants, etc., so long as it does not impair reception.

4.  SIGNAL TRANSMISSION FROM EXTERIOR DISH OR ANTENNA TO INTERIOR OF DWELLING.  You may not damage or alter the leased premises and may not drill holes through outside walls, doorjambs, windowsills, etc.  If your satellite dish or antenna is located outside your dwelling (on a balcony, patio, etc.), the signals received by it may be transmitted to the interior of your dwelling only by the following methods: (1) running a "flat" cable under a doorjamb in a manner that does not physically alter the Premises and does not interfere with proper operation of the door; (2) running a traditional or flat cable through a pre-existing hole in the wall (that will not need to be enlarged to accommodate the cable); (3) connecting cables "through a window pane" similar to how an external car antenna for a cellular phone can be connected to inside wiring by a device glued to either side of the window-without drilling a hole through the window; (4) wireless transmission of the signal from the satellite dish or antenna to a device inside the dwelling; or (5) any other method approved by us.

5.  WORKMANSHIP.  You are responsible for ensuring that the installation of any satellite dish or antenna is performed in a safe and secure manner within your leased space.  We reserve the right, but have no obligation, to inspect the installation of any satellite dish or antenna within your leased space.  We reserve the right, but have no obligation, to require that the satellite dish or receiving antenna be re-located, re-installed, or removed if in our reasonable judgment, such equipment poses a safety hazard or may cause damage beyond reasonable wear and tear to the Premises.

6.  MAINTENANCE.  You will have the sole responsibility for maintaining your satellite dish, receiving antenna and all related equipment.

7.  REMOVAL AND DAMAGES.  You must remove the satellite dish or receiving antenna and other related equipment when you move out of the apartment.  You must pay for any damages and for the cost of repairs or repainting which may be reasonably necessary to restore the Premises to its condition prior to the installation of your satellite dish, antenna or related equipment.

8.  LIABILITY INSURANCE AND INDEMNITY.  **You are liable for any injury or damage to persons or property caused by your dish, and you must maintain liability insurance covering any such damage.**  You install and operate your dish at your own risk.  You will be liable for any injury or damage to persons or property caused by your dish.  To ensure that you are able to pay damages in the event that your dish causes injury or damage, unless your apartment is on the ground floor, you must purchase and maintain liability insurance in an amount of not less than $100,000 for your dish for as long as you have it at the community. You must provide us with proof that you have this insurance, and AvalonBay must be named as "additional insured" under your liability policy.  We must be notified by your insurance carrier at least thirty days in advance of any cancellation of your liability policy.  Further, you agree to hold us harmless and indemnify us against any claims related to your dish by others.

You may start installation of your satellite dish or antenna only after you have provided us with written evidence of the liability insurance referred to above.  Your limited right to install a satellite dish, as well as our right to impose reasonable restrictions, both arise as a result of a Federal Communications Commission (FCC) order.  If you have any questions about this order, feel free to contact us or you may contact the FCC directly.

## WIRELESS INTERNET ACCESS (WiFi)

1.  GRANT OF AUTHORITY.  You are permitted to deploy a "Wireless Access Point" or "WiFi" within your premises, so long as such installation meets all the terms of clauses 2, 3, 4, 5, 6 and 7 of the "Satelllite Dishes" section above.  A wireless access point or WiFi is a short-range transmitting and receiving device necessary to provide wireless internet service to users located within your premises.

2.  BAN ON OBJECTIONABLE INTERFERENCE.  You are permitted to use such a wireless access ("WiFi") device in your apartment so long as such device does not result in *objectionable interference*.  Objectionable interference shall have the same meaning as that established by the Federal Communications Commission regulations or mean any interference that results in a material impairment of the quality of communication transmitted or received by existing communications users in the community prior to the operation of your "WiFi."

3.  OBLIGATION TO LIMIT EMISSIONS.  Your Wireless Access Point shall be designed, installed and operated in a manner that minimizes the degree to which radio signals or other electromagnetic emissions emanating from the Wireless Access Point extend outside your premises.

4.  NON-COMMERCIAL USE.  At no time may you resell or package Internet access by means of your Wireless Access Point or WiFi.  The grant of authority in these Community Policies is limited to installing such a device for your personal use only.

5.  COMMUNITY PROVIDED WIRELESS ACCESS POINT.  If the Community provides a Wireless Access Point for the use of its residents such service is provided only as a convenience to you.  By using any such Wireless Access Point you agree that such Wireless Access Point and access to the Internet are at your sole risk, and are provided on an "As Is" and "As Available" basis without warranties of any kind, express or implied.  You also acknowledge that such access is not

RB   JT

encrypted or filtered in any way and that the Community does not provide a firewall or other type of Internet protection. You agree that the Community and its affiliates shall not be liable, and you hereby waive any claims against the Community and its affiliates for any damages arising out of your use of such Wireless Access Point, including without limitation personal injury or property damages, loss due to unauthorized access or due to viruses or other harmful components, the inability to use the internet service, the content of any data transmission, communication or message transmitted to or received by your computer, and the interception or loss of any data or transmission.

6.  INDEMNIFICATION.  You shall defend, indemnify, and hold the Owner, its agents, officers and employees completely harmless from and against any and all claims, suits, demands, actions, liabilities, losses, damages, judgments, or fines, including all reasonable costs for investigation and defense thereof (including, but not limited to, attorneys fees, court costs and expert fees), of any nature whatsoever arising out of your operation of or access to any Wireless Access Point or the provision of Wireless Internet Service by means of any Wireless Access Point.

## SWIMMING POOL POLICIES
**Some Community swimming pools are NOT supervised by a lifeguard or other responsible persons.**

1.  NEVER SWIM ALONE!

2.  AGE REQUIREMENT.  There is no substitute for adequate supervision. Persons under the age of 14 are not allowed at the pool unless accompanied by a parent or guardian or a responsible adult.

3.  GUESTS.  No more than 2 guests per apartment may be invited to the pool. Guests must be accompanied by a resident over 18 years of age. Residents are responsible for their guests and their actions.

4.  CONTAINERS.  No glass containers are allowed. Only unbreakable containers are allowed in the pool area.

5.  ALCOHOL.  DO NOT swim and drink alcohol. Alcoholic beverages are NOT permitted in the pool area.

6.  HEALTH DEPARTMENT REGULATIONS.  As per health department regulations, the pool is not to be used by anyone with an infectious disease, inflamed eyes, a cold, nasal or ear discharge, open sores, or bandages of any kind.

7.  SMOKING.  Smoking is NOT allowed in the pool or pool area.

8.  TRASH.  Beverage containers and litter must be disposed of in the provided trash receptacles.

9.  PETS.  Pets are expressly forbidden in or around the pool area.

10.  BATHING SUITS.  Regulation bathing suits must be worn in the pool and Jacuzzi area (if applicable).

11.  DIAPERS. No diapers allowed in the pool.  Swim diapers must be used as appropriate

12.  CONDUCT.  The ropes and life rings are not play toys. They are there for a purpose. Do not hang or sit on the ropes.  Do not wear hairpins or rollers or use excessive suntan oil in the pool, as they can damage the pool and associated equipment. Profanity, horseplay, bicycle riding, skating, riding toys, scuffling, loud music, or harassment of other swimmers will not be permitted.

13.  MUSIC.  Loud music is NOT allowed at the pool.

14.  HOURS.  The pool may only be used during posted hours of operation.   Refer to your move-in package or to pool signs for pool hours. Pool hours are subject to change at management's discretion. Be aware that due to repairs or other circumstances the pool may be closed from time to time.

15.  INCLEMENT WEATHER.  Swimming is not allowed during inclement weather (i.e. thunderstorms, lightening).

16.  VIOLATION OF POOL POLICIES. Residents or guests who violate the pool policies will be held to a zero tolerance policy and subject to eviction.

17.  EMERGENCIES.  In an emergency, contact help immediately.

18.  OTHER RULES.  All other posted rules and policies must be followed.

## PET POLICIES
The following rules are to be observed by pet owners residing in the Community:

1.  Pets, including dogs and cats, are permitted at the Community only with our permission. Certain types of pets are not

*RB  JT*

allowed. These include, but are not limited to, monkeys, ferrets, snakes, rabbits, livestock, reptiles and certain dogs. The restricted dog breeds include, but are not limited to, some Terriers including Pit Bulls (a/k/a American Staffordshire Terriers or Staffordshire Bull Terriers), American Bull Dog, Tosa Inus, German Shepherds, Rottweilers, Presa Canarios, Fila Brasileiros, Argentine Dogos, Akitas, Chow Chows, Shar Peis, Dalmatians, Doberman Pinschers, Boxers, Alaskan Malamutes, Basset Hounds, Blood Hounds, Bull Mastiffs, Wolf Hybrids and all mixes of these breeds. We may at our discretion limit pets to certain designated buildings at the Community. Once such permission is granted, it will not be revoked as long as the resident pet owner abides by these policies, controls the pet, and shows due consideration of other residents of the Community.

As set forth in the Lease, when a pet is acquired, a non-refundable pet charge or increased deposit and a monthly charge are required to be paid by you. If there is more than one pet, the monthly charge will be assessed for each pet.

2.   Pets with a history of biting are not permitted at the Community. You agree and assume full responsibility for personal injuries or property damage caused by the pet, and hereby agree to indemnify the Community and hold the Community harmless against any loss, or liability of any kind or character whatsoever resulting from the privilege of having a pet on the premises. You are responsible for the action of the pet at all times.

3.   NUMBER OF PETS. No more than 2 pets per apartment home.

4.   MAINTENANCE SERVICE. Pets must be restrained whenever a maintenance service call is requested.

5.   TOILET. In order to keep the grounds clean and sanitary, all pets must be taken to the outside perimeter of the Community for their toilet purposes. It will be a violation of these rules if you simply "turn out the pet" and recall it at your convenience. You must clean up after your pet!

6.   LEASH. Pets must be on a leash at all times when outside the apartment.

7.   TYING UP/BALCONIES. Pets are not to be tied or staked outside the apartment. Residents living in upstairs apartments with a balcony may not leave the pet on the balcony for extended lengths of time.

8.   PATIOS AND PET FOOD. Patios should be kept clean of pet droppings. During hot weather, especially, odors can be extremely offensive to neighbors. Also, please avoid leaving pet food outside for prolonged periods as it will attract pests.

9.   AMENITY AREAS. Pets are not allowed in the pool or amenity areas at any time.

10.  Residents violating these policies regarding pets must reimburse us for any damage or loss incurred for each violation, in the discretion of the Community Manager. You agree to remove any pet that in our opinion bothers other residents, whether inside or outside, or that constitutes a problem or obstruction to our employees or to service providers from properly performing their duties. If you fail to remove a pet following a request from us, you agree that we may terminate your lease.

## FIREPLACE/FIRE PIT POLICIES

If this amenity is applicable at the community, the following rules are to be observed:

1.   The amenity areas are for residents and their guests only.  Your guests must be accompanied by you.

2.   Do not throw any items into the fire or surrounding area.

3.   The fireplace or fire pit is not to be used as a means of cooking or roasting food, including but not limited to marshmallows.

4.   Residents and/or guests are to use appropriate seating and not to sit on the ledge of the fire pit or fireplace.

5.   The fire/flame should not be left unattended.  Use the appropriate posted method to extinguish the fire/flame.

6.   In the event of an emergency, press the nearby red emergency button (if applicable) and call 911.

These Community Policies are to be strictly observed and will be enforced by us.  We may, however, insist that you observe all of these Community Policies even if you did something in violation of these policies and we did not object.  Thus our failure or delay, if any, in demanding compliance by you of these Community Policies will not be deemed a waiver of our right to insist on full compliance by you in the future.  We reserve the right to modify these Community Policies and to make such other reasonable rules as, in our judgment, from time to time become necessary to ensure the enjoyment of the Community by our residents.

*RB    JT*

Account# CA079-008-1887-8

Thanks for your cooperation in observing these Community Policies.

RESIDENT OR RESIDENTS:                    AvalonBay Communities, Inc., Manager As Agent for Owner

*Janna Thomas, 09/10/2014*                by: *Shannon Drozen, 09/11/2014*
**Janna Thomas**                                                              Date

*Rolando Brock, 09/10/2014*
**Rolando Brock**

**1887**
Apartment Number



*RB   JT*

## ACCEPTANCE OF KEYS/GARAGE REMOTES/
## CONTROLLED ACCESS PASSES

I(We) **Janna Thomas, and Rolando Brock** (Leaseholder)(s), resident(s) of **1887 Trade Zone Court, San Jose, California 95131** (address), do hereby acknowledge that I(We) will receive the following items below on move-in day:

**2** Mailbox Key(s)

**2** Apartment Key(s)/Fob(s)                                                   #_____         #_____
                                                                                                     #_____         #_____

_____ Common Area Key(s)/Card(s)/Fob(s) (i.e.,fitness/pool/building)   #_____         #_____
                                                                                                     #_____         #_____

_____ Controlled Access Device(s)/Card(s)/Fob(s)                    #_____         #_____
                                                                                                     #_____         #_____

_____ Garage Remote(s)/Fob(s)                                           #_____         #_____
                                                                                                     #_____         #_____

_____ Parking Tag(s)/Carport Tag(s)                                      #_____         #_____
                                                                                                     #_____         #_____

_____ **N/A**                                                                   #_____         #_____
                                                                                                     #_____         #_____

I(We) understand that the above set of keys, controlled access devices/passes, remotes, and parking tags are the only set that will be provided during the term of the lease agreement. No additional items will be provided unless this practice is within community-specific standard procedures and the Community Manager is in agreement. Charges for additional items may apply where applicable.

I(We) understand that I(We) am(are) responsible to return the above items to Management upon move-out and I(We) will not make duplicate keys without first consulting Management.

In the event that I(We) misplace any of the keys, controlled access devices/passes, remotes, or parking tags, the charges below will apply per item. In addition, if I do not return the mailbox keys, controlled access devices/passes, remotes, or parking tags at move-out the same charges will apply.

**$25.00** Apartment key(s)/Fob(s)                          **$25.00** Mail box key(s)
**$0.00** Controlled Access Device(s)/Card(s)          **$50.00** Garage Remote(s)/Fob(s)
**$0.00** Parking Tag(s)/Carport Tag(s)                   **$50.00** Common Area Key(s)/Card(s)/Fob(s)
**$50 N/A**

*Janna Thomas*                                   *09/10/2014*
**Janna Thomas**                                Date

*Rolando Brock*                                 *09/10/2014*
**Rolando Brock**                               Date

AvalonBay Communities, Inc., Manager As Agent for Owner
by: *Shannon Drozen, 09/11/2014*
                                                                 Date




*RB    JT*

# *eaves San Jose II*
## *Asbestos Notification for Proposition 65*

To Resident(s):

The **eaves San Jose II** apartment homes were originally constructed in the 1980's. During that time, asbestos, which is a naturally occurring mineral, was a common component of building materials used in the construction of apartments, schools, commercial and industrial buildings. Detectable amounts of asbestos, known to the state of California to cause cancer and birth defects or other reproductive harm, are or may be found in or around this facility.

**ATC Associates Inc., 6602 Owens Drive, Suite 100, Pleasanton, CA 94588**, a licensed environmental management company, was engaged to inspect the floor tiles below the vinyl flooring for the presence of asbestos within the materials used to construct the apartment complex. Asbestos was identified as a minimal component of various materials used during construction. The asbestos within these materials is encapsulated, which means that the asbestos fibers in those materials cannot be released absent the physical destruction or disturbing of these materials. Disturbing asbestos-containing materials, such as those listed above, can present health risks and should not be attempted by unqualified individuals.

AvalonBay Communities, Inc. values the safey and health of its residents and has procedures in place to help contain any detectable asbestos. Therefore, please contact your Community Manager in the Leasing Center at (408)945-6650 should you have any questions.

*RB   JT*

Account# CA079-008-1887-8

# eaves San Jose II
## Utility & Renter's Insurance Verification Form

*This form must be returned to the Leasing office on or before the date of residents move in. You will not be given keys to your apartment without proof of renter's insurance and your gas and electric account numbers. NOTE: You can log on to www.AvalonAccess.com to set up your utilities (not all providers will be available) and sign- up for Renters Insurance. You can also schedule automatic rent payments at this website!*

**Janna Thomas, and Rolando Brock** will be moving into **eaves San Jose II** on **09/26/2014**. The address is **1887 Trade Zone Court San Jose, California 95131** .

Please provide your renter's insurance policy number and your utility account numbers for our records. If you enrolled in these services through Avalon Access, please provide your order #s from your accepted orders (i.e. White Fence Order ID, SPXXXXXXXX)

| | | |
|---|---|---|
| Electric Account #/ Avalon Access Order # | Order Date/Time (Avalon Access Users Only) | Connection Date |
| Gas Account #/ Avalon Access Order # | Order Date/Time (Avalon Access Users Only) | Connection Date |
| Water Account Number (if applicable) | | Connection Date |
| Renter's Insurance Company | | Effective Date |
| *Renter's Ins. Policy #/ Avalon Access Order # | Order Date/Time (Avalon Access Users Only) | Expiration Date |
| *Janna Thomas* <br> Name - **Janna Thomas** | | Primary Phone #/Type (home, work, cell) |
| Email Address | | Secondary Phone #/Type (home, work, cell) |
| | | Primary Phone #/Type (home, work, cell) |
| *Rolando Brock* <br> Name - **Rolando Brock** | | Secondary Phone #/Type (home, work, cell) |
| Email Address | | Intercom Phone # (if applicable) |

*You must provide proof of **$100,000 minimum liability renter's insurance**, not just policy number. On or before your move-in date, we must have a copy of either the **Declaration Page of your policy** (1st page summarizing policy) or a **Binder of Insurance** (summarizes a pending policy).

*RB   JT*

**Authorization:**

The undersigned authorizes and appoints AvalonBay Communities, Inc. as his or her agent to act on his or her behalf to perform the following specific acts and functions with regard to the above utility accounts:

1. Request and receive billing records, billing history and all meter usage data used for bill calculation for all of account(s), as specified herein, regarding utility services.

2. Request and receive copies of correspondence in connection with my account(s) concerning:
   a. Verification of rate, date of rate change, and related information;
   b. Contracts and Service Agreements
   c. Previous or proposed issuance of adjustments/credits; or
   d. Other previously issued or unresolved/disputed billing adjustments.

3. Request special metering, and the right to access interval usage and other metering data on my account(s).

4. Request and receive verification of balances on my account(s) and discontinuance notices.

**RESIDENT(S):**

*Janna Thomas*
_____
**Janna Thomas**

*09/10/2014*
_____
Date


*Rolando Brock*
_____
**Rolando Brock**

*09/10/2014*
_____
Date

*RB   JT*

Account# CA079-008-1887-8

Date **09/12/2014**

**Janna Thomas and Rolando Brock**

Dear **Janna and Rolando**,

Welcome to **eaves San Jose II**.  We realize you have many options when choosing where to live and we are delighted that you chose **eaves San Jose II** to call home.  We know that moving can be a stressful time; therefore, we have designed this information package to help make your move as easy as possible.

**Getting Started:**
Please be sure to read and understand the enclosed materials before signing and returning the following items to the Community Leasing Center.
- ➤ Lease Agreement with Lease Summary Page
- ➤ Security Deposit Agreement
- ➤ Utility & Renter's Insurance Verification Form
- ➤ Community Policies
- ➤ "About Avalon Access" reference guide, your key to 24-hour service, 7 days a week.
- ➤ Community Specific Forms – i.e. lead paint, concession addendum, etc.

**Next Steps:**
The following must be completed *prior* to your move-in day:
1. **Read, sign and return all lease paperwork to the Community Leasing Center.** *All paperwork, including the enclosed Utility & Renter's Insurance Verification Form must be completed and fees paid in order to receive keys to your new apartment home.* Please note that obtaining renter's insurance and most utility connections can be done on the internet at www.AvalonAccess.com.
2. **Contact your Community Consultant to make all necessary moving arrangements.**  To ensure that all resources will be available, such as elevators or loading docks, we recommend contacting us as soon as possible to select a time that is most convenient for you.
3. **Schedule your Community Orientation!**  During your brief orientation on move in day, a Community Consultant will familiarize you with your new apartment home, as well as answer any questions about your new neighborhood.  At this time you will receive keys to your new apartment and complete any outstanding paperwork.

**Contact us!**
- ➤ **Billing Inquiries** – Your rent is due on the 1st of the month and is to be sent to the following:

  **eaves San Jose II**
  P.O. Box 6060
  Artesia, CA 90702-6060

- ➤ For questions, please contact the AvalonBay Customer Care Center at 1-877-AVB-MAIN (1-877-282-6246) or via email at customercarecenter@avalonbay.com.  Hours of operation are Monday – Friday 8:30 AM - 8:30 PM and Saturday 12:30 PM – 5:00 PM EST.
- ➤ **Maintenance Requests** – www.AvalonAccess.com or the 24-hour maintenance line **(866)264-9267**.
- ➤ **For all other questions** - Please call me or the Community Manager, **Shannon Drozen**, at **408-945-6650** or via email at **eavesSanJose@eavesbyavalon.com**.  The Community Leasing Center is open **Monday - Thursday 9:30 AM – 6:30 PM and Friday - Saturday 8:30 AM – 5:30 PM.**

Again, thank you for selecting **eaves San Jose II**.  Our entire team is dedicated to creating a community that you are proud to call home.

Sincerely,


**Vanessa Rich**
**CC**
**eaves San Jose II**

*RB   JT*

Date **09/12/2014**

**Janna Thomas and Rolando Brock**

Dear **Janna and Rolando**:

Welcome home! At **eaves San Jose II**, we are very excited that your move-in day has arrived.  We realize that today will be a hectic day and have prepared this packet to streamline your transition to Avalon Communities.

**Move-in Packet:**
Your move-in packet contains the following information to orient you to **eaves San Jose II**.
- Signed Lease Paperwork
- Billing and Maintenance FAQs
- Community Map
- Neighborhood Map
- Resident Referral Flyer

**Next Steps...**
You are almost there, only two more steps to finish your move-in to **eaves San Jose II**.
1. **Avalon Access.**  Avalon Access is your key to 24-hour service, 7 days per week.  Please take five minutes and head straight to www.AvalonAccess.com so that you can make rent payments and submit service requests at your convenience.
2. Sign Up for Electronic Statements:  Help AvalonBay go green by reducing the amount of paper we use.  Sign up for monthly e-statements at www.AvalonAccess.com.
3. **Review the Move-in Checklist.**  We completed the move-in checklist for you to establish the condition of your apartment home upon move-in.  Please contact us within 5 days if you have additional items to note.

**Contact us!**
- **Billing Inquiries** – AvalonBay Customer Care Center:
  - 1-877-AVB-MAIN (1-877-282-6246)
  - **customercarecenter@avalonbay.com**
  - Mon-Fri 8:30am-8:30pm,  Sat 12:30pm-5:00pm EST
- **Maintenance Requests**
  - 24-hr Maintenance Service Line - **(866)264-9267**
  - **www.AvalonAccess.com**
- **Anything Else** - The **eaves San Jose II** Leasing Center
  - **408-945-6650**
  - **eavesSanJose@eavesbyavalon.com**
  - **Monday - Thursday 9:30 AM – 6:30 PM and Friday - Saturday 8:30 AM – 5:30 PM**

Thank you for selecting **eaves San Jose II**.  Our entire team is dedicated to making you feel at home.  You will be receiving a customer service survey in the next few weeks.  Please take a minute to tell us about your move-in so that we can continue to enhance your living experience at **eaves San Jose II**.

Sincerely,


**Vanessa Rich**
**CC**
**eaves San Jose II**

*RB   JT*

# Signature Certificate

## Document Reference: 1410215048210



**Janna Thomas**

Email: jannae731@gmail.com

IP Address: 67.188.69.165

**Electronic Signature**

*Janna Thomas*

**Rolando Brock**

Email: rolandlee.lee13@gmail.com

IP Address: 67.188.69.165

**Electronic Signature**

*Rolando Brock*

**Shannon Drozen, sdrozen**

Email:

IP Address: 206.16.201.81

**Electronic Signature**

*Shannon Drozen*

## Transaction ID: FP003649386

| TimeStamp | Audit |
|-----------|-------|
| 2014-09-08 22:23:28 | Document created by user VRICH; IP: 206.16.201.81 |

| TimeStamp | Audit |
|---|---|
| 2014-09-08 22:24:08 | Document emailed to: jannae731@gmail.com (Janna Thomas), rolandlee.lee13@gmail.com (Rolando Brock), |
| 2014-09-11 00:33:04 | Document viewed by: jannae731@gmail.com (Janna Thomas) |
| 2014-09-11 00:33:04 to 2014-09-11 01:27:07 | page 1 |
| 2014-09-11 01:27:07 to 2014-09-11 01:27:21 | page 2 |
| 2014-09-11 01:27:21 to 2014-09-11 01:27:29 | page 3 |
| 2014-09-11 01:27:29 to 2014-09-11 01:27:38 | page 4 |
| 2014-09-11 01:27:38 to 2014-09-11 01:27:46 | page 5 |
| 2014-09-11 01:27:46 to 2014-09-11 01:27:53 | page 6 |
| 2014-09-11 01:27:53 to 2014-09-11 01:27:59 | page 7 |
| 2014-09-11 01:27:59 to 2014-09-11 01:28:04 | page 8 |
| 2014-09-11 01:28:10 | Document signed by: jannae731@gmail.com (Janna Thomas) |
| 2014-09-11 01:32:54 | Document viewed by: rolandlee.lee13@gmail.com (Rolando Brock) |
| 2014-09-11 01:32:54 to 2014-09-11 01:36:09 | page 1 |
| 2014-09-11 01:36:09 to 2014-09-11 01:36:34 | page 2 |
| 2014-09-11 01:36:34 to 2014-09-11 01:36:51 | page 3 |
| 2014-09-11 01:36:51 to 2014-09-11 01:37:26 | page 4 |
| 2014-09-11 01:37:26 to 2014-09-11 01:38:41 | page 5 |
| 2014-09-11 01:38:41 to 2014-09-11 01:38:54 | page 6 |
| 2014-09-11 01:38:54 to 2014-09-11 01:39:29 | page 7 |
| 2014-09-11 01:39:29 to 2014-09-11 01:40:13 | page 8 |
| 2014-09-11 01:40:36 | Document signed by: rolandlee.lee13@gmail.com (Rolando Brock) |
| 2014-09-11 19:23:12 | Document viewed by: Shannon Drozen, sdrozen |
| 2014-09-11 19:23:12 | Document counter signed by: Shannon Drozen, sdrozen |